UNITED STATES of America, Plaintiff,

v.

Terrance Kenneth PROVOST,
Defendant.

Crim. No. 87–30014–01.

United States District Court,
D. South Dakota.

Oct. 16, 1991.

Amended for Publication and Re-filed
Oct. 24, 1991.

Mikal Hanson, Asst. U.S. Atty., Pierre, S.D., for plaintiff.

Robert C. Riter, Jr., Riter, Mayer, Hofer & Riter, Pierre, S.D., for defendant.

## MEMORANDUM OPINION

DONALD J. PORTER, District Judge.

### I. FACTS

On June 26, 1987, in this Court, a jury found defendant, Terrance Kenneth Provost, guilty of aggravated sexual abuse for sexually abusing his half-sister Loretta Lee Stone, a ten year-old child, in violation of 18 U.S.C. §§ 2241(c) and 2245(2)(A). Defendant's subsequent motions for judgment of acquittal, arrest of judgment, and new trial based upon newly discovered post-trial evidence that Loretta Stone had implicated her step-brother as the person who assaulted her were denied by this Court on August 7, 1987 and the defendant appealed. On May 15, 1989, the Eighth Circuit affirmed in *United States v. Provost*, 875 F.2d 172 (8th Cir.), *cert. denied*, 493 U.S. 859, 110 S.Ct. 170, 107 L.Ed.2d 127 (1989).

Defendant, on July 15, 1991, filed in this Court a motion for new trial [F.R.Crim.P. 33] based upon newly discovered evidence in the form of a material witness' recantation.

Defendant's motion for new trial is based upon Loretta Stone's post-trial recantation of her prior allegations and testimony that defendant, Terrance Provost, sexually abused her. In support of his motion, defendant has submitted affidavits by Shirley Marvin, Loretta's mother, and Loretta's treating clinical psychologist, Dr. Frank Buzzetta, which contain statements by Loretta tending to exonerate defendant of the sexual abuse charges, and which instead, implicate Loretta's step-brother Shane Stone.

Dr. Buzzetta's affidavit states that during a treatment session with Loretta on June 25, 1991, Loretta told Dr. Buzzetta that defendant had not sexually assaulted her, and instead, that it was Shane Stone. The affidavit illustrates Dr. Buzzetta's belief that Loretta has been "truthful and open" to him in recanting her prior accusations against Terrance Provost.

Shirley Marvin's affidavit includes two letters written by Loretta addressed to defendant in prison. The first letter relates:

This is a letter of apologie (sic) ... for everything I put you through you never touched me Shane did but I couldn't say anything because I was living there. I told my dad once when I was at Mchennan Hospital But exploded and called me a liar. I told NANO But she just Glared at at me and nothing was said after that . . .

I tried so hard to tell them that it was Shane But *NOBODY* Belived (sic) me ... Im (sic) sorry I put you through Hell. now it hurts me so bad.... When I tried sucide (sic) my 3 times it was because of my guilt of lying and not Being able to tell the truth. I fully understand if you dispise (sic) me. its (sic) understandable. But remember I will always love you and feel guilt for what I did. please (sic) write me and tell me your feelings about this. as Always Loretta Stone (sic)

Exhibit 1 attached to Affidavit of Shirley Marvin.

Letter two, dated July 19, 1991, four days after defendant's motion for new trial was filed, is similar to the first letter. It reads in part:

This is a letter of apologie (sic). You have done nothing pertaining to sexual molestation toward me. I have lived with the pain of this lie as well as you. I can't fully understand the extent of your pain and suffering or you mine ... I am scared now because I could be put in *juvi* (sic) for pergury (sic) in court—(lying) But if that is the fate that is chosen to befall me *I will* take my medician (sic)

... I feel sad for mother (sic) She has worn lines of hate and worry upon her face.

Exhibit 2 attached to Affidavit of Shirley Marvin. The second letter also includes the notation: "P.S. Mother wanted me to send both letters. So I shall."

Defendant's counsel alleges that this newly discovered evidence explains discrepancies in the testimony given at trial. For instance, defendant claims that Loretta Stone's recantation now explains the fact that defendant was not infected by chlamydia despite the presence of the infection in Loretta Stone. In addition, the recantation, according to defendant, explains the fact that Loretta's initial physical examination shortly after the assault failed to show a torn hymenal ring while a similar examination three months later, at the time Loretta was living with her father and Shane Stone, illustrated a partial tear. The government resists the motion for new trial and alleges that Loretta Stone has been pressured by third parties, namely, family members, into recanting her prior accusations against defendant. As evidence of this, the government notes that Loretta has been living with her mother or her mother's relatives during the time her testimony conversion has taken place. The government argues that the motion for new trial is a last-ditch attempt to avoid the two-year statute of limitations barring motions for new trial.

## II. DISCUSSION

Before reaching the merits of defendant's motion for new trial, a procedural matter must be considered.

### A. *Timeliness of Defendant's Motion for New Trial*

■ Defendant was convicted of aggravated sexual abuse on June 26, 1987. The conviction was affirmed on appeal. *United States v. Provost*, 875 F.2d 172 (8th Cir. 1989). The Eighth Circuit issued its mandate of affirmance on July 19, 1989.

■ Under Rule 33 of the Federal Rules of Criminal Procedure, a "motion for new trial based on the ground of newly discov-

ered evidence may be made only before or within two years after final judgment...." The requirements of Rule 33 are jurisdictional, that is, a district court may not consider an untimely motion for new trial. *United States v. Spector*, 888 F.2d 583, 584 (8th Cir.1989). When considering the timeliness of a motion for new trial under Rule 33, the two-year limitations period begins to run when the appellate process is terminated, the date on which the appellate court issues its mandate of affirmance. *Spector*, 888 F.2d at 584.

The government claims that defendant's July 15, 1991 motion for new trial is untimely because it was filed more than two years after May 15, 1989. The government, however, relies on May 15, 1989 as the date of the appellate court's mandate of affirmance. May 15, 1989 is the date on which the Eighth Circuit issued its order affirming the district court's decision. The correct date of the Eighth Circuit's mandate of affirmance, as the government's certified copy of the mandate illustrates, is July 19, 1989. Therefore, defendant's motion, filed July 15, 1991, is timely having come within two years of the Eighth Circuit mandate.

### B. *Recantation of Victim of Child Sexual Abuse as Basis for New Trial*

#### 1. Evidentiary Hearing

■ Defendant requests an evidentiary hearing to establish the foundation for his motion for new trial.

■ In considering a motion for new trial based upon newly discovered evidence, this Court has discretion in deciding whether to conduct an evidentiary hearing. *United States v. Bednar*, 776 F.2d 236, 239 (8th Cir.1985). The decision will not be disturbed on appeal absent a clear abuse of discretion. *United States v. Atkins*, 545 F.2d 1153, 1154 (8th Cir.1976).

■ The district court typically may decide a motion for new trial solely on the basis of affidavits and without resort to an evidentiary hearing. *United States v. Provost*, 921 F.2d 163, 164 (8th Cir.1990), *cert. denied*, — U.S. ——, 111 S.Ct. 1603,

113 L.Ed.2d 666 (1991), *citing Bednar*, 776 F.2d 236, 239. Where exceptional circumstances exist, however, the district court may grant an evidentiary hearing to assess the ultimate necessity for a new trial. *Provost*, 921 F.2d 163, 164 (8th Cir.1990); *Bednar*, 776 F.2d 236, 239. For instance, in *Lyles v. United States*, 272 F.2d 910 (5th Cir.1959), the Court required the district court to conduct an evidentiary hearing because both parties believed such a hearing was not only advisable, but absolutely necessary. *Id.* at 913. Evidentiary hearings should also be conducted when the new trial is sought upon the discovery of juror misconduct. *United States v. Persico*, 339 F.Supp. 1077, 1084 (E.D.N.Y.), *aff'd*, 467 F.2d 485 (2nd Cir.1972).

■ This case is void of exceptional circumstances. Neither juror misconduct nor request for new trial by both parties is alleged. This Court presided at defendant's trial and first motion for new trial. Where the trial judge deciding the motion for new trial presided at the trial, the necessity for and utility of an evidentiary hearing diminishes since the judge has been afforded the opportunity to observe the demeanor and weigh the credibility of the witnesses. *United States v. Begnaud*, 848 F.2d 111, 113–15 (8th Cir.1988); *United States v. Curry*, 497 F.2d 99, 100–01 (5th Cir.1974), *cert. denied*, 419 U.S. 1035, 95 S.Ct. 519, 42 L.Ed.2d 311 (1974) ("the acumen gained by the trial judge who presided during the entire course of these proceedings makes him well qualified to rule on the motion for a new trial on the basis of the affidavit and makes a time consuming hearing unnecessary"). Loretta Stone and Shirley Marvin both were witnesses at defendant's jury trial.

In support of his motion for a new trial defendant provides affidavits from Shirley Marvin, the victim's mother, and Dr. Frank Buzzetta, a clinical psychologist who treated Loretta subsequent to defendant's trial. The Court finds that these affidavits, in addition to the fact that the Court has already observed the demeanor and credibility of Loretta Stone and Shirley Marvin at trial, provide sufficient information for this Court to rule on the motion for new trial. That Dr. Buzzetta's testimony is by affidavit only, since he was not a witness at the original proceeding, does not alter this conclusion. The material part of Dr. Buzzetta's testimony is that Loretta is being truthful and open in recanting her accusations against defendant. Little would be added were the Court to receive this testimony in an evidentiary hearing rather than by affidavit. Dr. Buzzetta's proffered testimony would be inadmissible expert testimony. In *United States v. Azure*, 801 F.2d 336 (8th Cir.1986), the Eighth Circuit held that a pediatrician could not testify to the veracity of the child victim of sexual abuse whose statement was that it was the defendant who sexually abused the child. *Id.* at 341; *see United States v. Provost*, 875 F.2d 172, 175 (8th Cir.1989); *United States v. St. Pierre*, 812 F.2d 417, 419 (8th Cir.1987). In attempting to place his "stamp of believability" on Loretta's recantation, Dr. Buzzetta is impermissibly usurping a function that has been given exclusively to the jury, determining the credibility of a witness.

## 2. New Trial

■ The test in the Eighth Circuit for granting a new trial is well established. In order to warrant a new trial, the following grounds must be proved:

"(1) the evidence must be in fact newly discovered, that is, discovered since the trial; (2) facts must be alleged from which the court may infer diligence on the part of the movant; (3) the evidence relied upon must not be merely cumulative or impeaching; (4) it must be material to the issues involved; and (5) it must be of such a nature that, on a new trial, the newly discovered evidence would probably produce an acquittal."

*United States v. Provost*, 921 F.2d 163, 164 (8th Cir.1990), *citing United States v. McColgin*, 535 F.2d 471, 476 (8th Cir.), *cert. denied*, 429 U.S. 853, 97 S.Ct. 145, 50 L.Ed.2d 128 (1976).

■ It is important to note that motions for new trial based upon recanted testimony are immediately suspect. *United States v. Ward*, 544 F.2d 975, 976 (8th

Cir.1976); *State v. Tharp*, 372 N.W.2d 280, 282 (Iowa App.1985); *State v. Whiteside*, 400 N.W.2d 140, 146 (Minn.Ct.App.1987), *citing State v. Caldwell*, 322 N.W.2d 574, 585 n. 7 (1982) ("Courts tend to view recanted testimony with suspicion because of the possibility that it was obtained through coercion."). This may especially ring true in the circumstance of child sexual abuse where recantations are a recurring phenomenon. *See State v. Lindsey*, 149 Ariz. 472, 720 P.2d 73 (1986). In *State v. Tharp*, 372 N.W.2d 280 (Iowa App.1985), the Supreme Court of Iowa upheld the denial of defendant's motion for new trial based upon the fourteen year-old victim's recantation citing the fact that "where families are torn apart, there is great pressure on the child to 'make things right.'" *Id.* at 282. One commentator has poignantly described the family dynamics surrounding such sexual abuse:

> Once the sexual abuse has been disclosed, the family may react by trying to suppress the incident. The perpetrator may attempt to undermine the credibility of the child and the allegation of sexual abuse. The perpetrator may seek to induce feelings of guilt in the child for her part in disclosing the secret, and other family members may side with the offender, thus effectively alienating the victimized child. Mothers of victims may be ambivalent, caught between protecting the child or protecting the father. The family may exert pressure upon the child in the form of verbal abuse or threats, with the hope that the child will recant or, in cases in which the child is old enough to file a legal action, with-

draw the complaint.... If the child does not withdraw the complaint, the family may portray the child at the hearing as emotionally disturbed or as a pathological liar. Once again, the family's goal is to undermine the child's credibility and characterize the accusation as untrue.... After the child has disclosed the incident, it is not unusual for the child to deny later that the abuse occurred. Child victims of sexual abuse are frequently influenced by the father and other family members to retract or recant their story so that family life will return to 'normal.'

Elaine R. Cacciola, *The Admissibility of Expert Testimony in Intrafamily Child Sexual Abuse Cases*, 34 UCLA L.Rev. 175, 184–88 (1986); *see* Rebecca J. Roe, *Expert Testimony in Child Sexual Abuse Cases*, 40 U. Miami L.Rev. 97, 108–09 (1985) ("Children may recant for a number of reasons that include the guilt that they feel for the destruction of the family and the potential imprisonment of a 'loved one.'").[1] This phenomenon is not a major reason for the conclusion reached here. However, it does shed light on the factual record surrounding Loretta Stone's recantation of her prior accusation against defendant.

The jury was sufficiently convinced by Loretta's testimony, which, of course, was subject to the rigors of cross-examination by defense counsel, to convict Provost of aggravated sexual assault. Shirley Marvin, as mother of the defendant, understandably has an interest in seeing that her son, Terrance Provost, is set free. Marvin's affidavit indicates that Loretta has been living with either Marvin or Marvin's

---

**1.** The government also cites to the current legal literature on the likelihood of recantation for a child victim of sexual abuse. In Myers, Bays, Becker, Berliner, Corwin and Saywitz, *Expert Testimony in Child Sexual Abuse Litigation*, 68 Neb.L.Rev. 1, 88 (1989) (quoting Summit, *Child Sexual Abuse Accommodation Syndrome*, 7 Child Abuse & Neglect 188 (1973)), the authors state:

> *Whatever a child says about sexual abuse, she is likely to reverse it.* Beneath the anger of impulsive disclosure remains the ambivalence of guilt and the martyred obligation to preserve the family. In the chaotic aftermath of disclosure, the child discovers that the bed-

rock fears and threats underlying the secrecy are true.... [T]he girl is blamed for causing the whole mess, and everyone seems to treat her like a freak.... Once again, the child bears the responsibility of either preserving or destroying the family. The role reversal continues with the 'bad' choice being to tell the truth and the 'good' choice being to capitulate and restore a lie for the sake of the family. *Id.* at 88 (emphasis original). The foregoing discussion, in conjunction with the specific facts of this case, casts serious doubt on defendant's statement in his brief in support of his motion for new trial that "[o]bviously the guilt related to [Loretta's] prior false accusations."

relatives since June 10, 1990, leaving ample time for Marvin to encourage Loretta's recantation. Indeed, one of Loretta's letters to Terry contained the notation, "P.S. Mother wanted me to send both letters. So I shall." These factors weigh against the ordering of a new trial. *State v. Whiteside*, 400 N.W.2d 140, 146 (Minn.Ct.App. 1987). With respect to the authenticity of Loretta's letters to defendant specifically, the Court is dubious of the periodic flashes of maturity exhibited by Loretta's apparent command of the written word unusual in a youngster thirteen years of age.

Even if the Court were to find the defendant's affidavits truthful, a new trial could not be granted because "facts must be alleged from which the court may infer diligence on the part of the movant." *United States v. Provost*, 921 F.2d 163, 164 (8th Cir.1990); *United States v. Begnaud*, 848 F.2d 111, 113–15 (8th Cir.1988). The record illustrates instances where defendant attempted to shift the blame, albeit unsuccessfully, to Shane Stone.[2] The defendant apparently believed it would be fruitful to bring up the possibility that Shane Stone assaulted Loretta. Given this belief, and the fact that defendant's case was based on the premise that Loretta was "making a false accusation" in the case (Tr. 80), reasonable diligence would have required the defendant to further investigate the possibility that Loretta was lying and that it was Shane Stone, not defendant, who had sexually assaulted Loretta. Having failed to proceed with diligence, the defendant's motion for new trial must be denied. *United States v. Atkins*, 545 F.2d 1153, 1154 (8th Cir.1976); *see Davis v. Blackburn*, 789 F.2d 350, 352 (5th Cir. 1986); *United States v. Stofsky*, 527 F.2d 237, 244 (2nd Cir.1975), *cert. denied sub nom. Hoff v. United States*, 429 U.S. 819, 97 S.Ct. 65, 50 L.Ed.2d 80 (1976).

---

**2.** Defendant's counsel, on cross-examination of Shane Stone's mother, Nano Stone, asked, "Has Shane been involved in the past year with any type of problems with the law?" (Tr. at 38). In cross-examining the victim, defendant's attorney asked, "How about with Shane, do you have problems with Shane from time to time?" (Tr. 75).