**UNITED STATES of America, Appellee,**

v.

**Leonard BEDNAR, Appellant.**

**No. 84–2659.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 15, 1985.

Decided Oct. 30, 1985.

Irl B. Baris, St. Louis, Mo., for appellant.

Terry I. Adelman, St. Louis, Mo., for appellee.

Before ROSS, Circuit Judge, BRIGHT, Senior Circuit Judge and WOLLMAN, Circuit Judge.

PER CURIAM.

On January 17, 1983, Leonard Bednar was convicted on three counts of knowingly making material false statements to the grand jury which was investigating the Stix & Company (Stix) fraud, and on one count of making false entries in the records at Stix in violation of the securities laws. This court affirmed the conviction. *United States v. Bednar*, 728 F.2d 1043 (8th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 110, 83 L.Ed.2d 54 (1984). Bednar now appeals the district court's decision denying his motion for a new trial on the basis of newly discovered evidence. For the reasons hereinafter stated, we affirm.

**FACTS**

This court previously summarized the perjury counts, and the evidence supporting the counts, as follows:

> Count I alleged that Bednar falsely testified that he always sent 1087 forms (forms which alert the IRS that taxes are due on margin accounts) to the IRS and that he never told Brimberry not to send these forms to the IRS. Count II alleged that Bednar falsely testified that the only conversation he had with Alice Eads (a Stix employee) regarding the deletion of dividend entries into the Stix computer was telling her to follow Brimberry's instructions on the matter. Count III alleged that Bednar falsely testified that he had prepared the J.A. Miller new account card by sitting down with Brimberry in 1977, asking questions about the person's background, and filling out the card by using such information.

\* \* \* \* \* \*

On count I, the government's evidence showed, through the testimony of Alice Eads, that Bednar had not mailed the 1087 forms in tax year 1979 and that he told Brimberry not to mail them in 1980 as he had not mailed them the previous year. \* \* \* On count II, Alice Eads testified that Brimberry and Bednar told her to delete all the dividends on securities which she could not find on the premises of Stix. Eads further testified that she was told to delete the dividends from the computer and throw away the backup papers. \* \* \* On count III, Den-

ise Hertlein (a Stix employee) testified that Bednar filled out the J.A. Miller new account card, by himself, in 1981 after the SEC examiners asked to see such card. \* \* \* [T]he J.A. Miller account was one of the main accounts in which the embezzlement occurred.

*United States v. Bednar, supra,* 728 F.2d at 1046. The false entry count (count IV) related to the new account card for the J.A. Miller account. "[T]he government called Denise Hertlein to testify that Bednar filled out the card himself, in 1981, with false information and dated the card as being prepared in 1977." *Id.* at 1047–48.

Thomas R. Brimberry, the central figure in the scheme to defraud Stix, did not testify at Bednar's trial. On October 3, 1984, however, Brimberry agreed to be interviewed by Bednar's attorney. After the interview, Brimberry signed an affidavit stating: 1) he was in charge of the 1087 forms, destroyed the forms himself, and never had any discussion with Bednar about mailing them (count I); 2) Alice Eads would not have discussed deleting dividends on securities with Bednar because he would have fired her if she had (count II); and 3) he had given Bednar the information to put on the J.A. Miller new account card in 1977, and Bednar had filled out the card at that time by using such information (counts III and IV).

Subsequently, Bednar filed a motion for a new trial on the basis of newly discovered evidence and attached Brimberry's affidavit as support for the motion. The government responded to the motion by arguing that Brimberry's affidavit "is directly at odds with Brimberry's Grand Jury testimony, and \* \* \* Bednar's conviction did not depend on any matter to which Brimberry was a witness." The government attached portions of Brimberry's grand jury testimony which conflicted with Brimberry's affidavit.

The district court ruled on the motion for a new trial without conducting an evidentiary hearing. In its memorandum opinion, the court first recognized that the affidavit "squarely contradicts Brimberry's sworn grand jury testimony." The court then stated:

> In the opinion of this Court, defendant's motion must be denied for two (2) reasons. First, Brimberry's assertions are merely impeaching evidence. Secondly, and more importantly, Brimberry's assertions are so lacking in credibility, in view of his prior grand jury testimony, that the chances of their producing an acquittal are very small and would not "probably produce an acquittal."

*United States v. Bednar,* No. 82–274CR(1) (E.D.Mo. Dec. 12, 1984). On appeal, Bednar argues that the court erred in denying Bednar's motion for a new trial and in failing to conduct an evidentiary hearing on the motion.

## DISCUSSION

### 1. Motion for New Trial

It is well established that:

> There are five prerequisites which must ordinarily be met to justify the grant of a new trial on the ground of newly discovered evidence:
>
> (1) the evidence must be in fact newly discovered, that is, discovered since the trial; (2) facts must be alleged from which the court may infer diligence on the part of the movant; (3) the evidence relied upon must not be merely cumulative or impeaching; (4) it must be material to the issues involved, and (5) it must be of such nature that, on a new trial, the newly discovered evidence would probably produce an acquittal.

*United States v. Ventling,* 678 F.2d 63, 67 (8th Cir.1982). It is further established that "[t]he grant or denial of a motion for new trial based on newly discovered evidence is within the broad discretion of the trial court, and the trial court's decision will not be reversed absent a clear abuse of discretion." *United States v. Ward,* 544 F.2d 975, 977 (8th Cir.1976).

The district court's conclusion that Brimberry's assertions would not "probably produce an acquittal" was based on the fact that Brimberry's present assertions

are directly contrary to statements which he made under oath before a grand jury. From this, we know that he either lied then, is lying now, or that he lied both then and now. The district court's decision in this case implies that a jury would be likely to determine that he is lying now. This conclusion is supported by the fact that, due to an immunity agreement, Brimberry had no reason to lie to the grand jury, whereas now he has a substantial motivation to lie since Bednar was his coworker at Stix. More importantly, the conclusion is supported by the fact that two witnesses whose credibility is unchallenged (Alice Eads and Denise Hertlein) testified at trial to facts directly contrary to those which Brimberry now asserts. Brimberry's credibility, on the other hand, would be undercut by his previous convictions for crimes of dishonesty (perjury, bankruptcy fraud, obstruction of justice) and his admitted crime of embezzling $16 million over a course of several years. Thus, we conclude that the trial court's denial of Bednar's motion for a new trial on the basis that Brimberry's testimony would not "probably produce an acquittal" was not an abuse of discretion. *See United States v. Rocco*, 587 F.2d 144, 148 (3d Cir.1978), *cert. denied*, 440 U.S. 972, 99 S.Ct. 1537, 59 L.Ed.2d 789 (1979) (impeachability of new witness aided finding that new witness' testimony would not produce an acquittal).

### 2. Right to a Hearing

 "A motion for new trial based on newly discovered evidence may be decided ordinarily upon affidavits without a hearing * * * [although] [t]here may be exceptional circumstances in which an oral hearing should be granted." *United States v. Ward, supra,* 544 F.2d at 976. The decision to hold a hearing, or to not hold a hearing, is within the broad discretion of the trial court. *United States v. Cardarella,* 588 F.2d 1204, 1205 (8th Cir.1978).

"Exceptional circumstances" requiring a hearing do not exist in this case. In fact, several circumstances in this case support the lack of a need for a hearing.

First, the district court judge was thoroughly familiar with Bednar's case in particular (he had been the judge at Bednar's trial) and with the Stix fraud in general (he had been the judge at the trial of two of Brimberry's partners in the Stix fraud—James Massa and Duane Skinner). In addition, the judge had been provided with Brimberry's affidavit and with Brimberry's contradictory grand jury testimony. Finally, Bednar never requested a hearing. Accordingly, we conclude that the trial judge did not abuse his discretion in rendering a decision on the motion for new trial without an evidentiary hearing.

Having rejected each of Bednar's arguments, we affirm.