George Esau LEWIS, Appellant,

v.

Robert A. ERICKSON, Warden, Appellee.

No. 91–1314.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 9, 1991.

Decided Oct. 15, 1991.

Douglas Peine, St. Paul, Minn., for appellant.

Lee W. Barry III, Minneapolis, Minn., for appellee.

Before McMILLIAN, FAGG and WOLLMAN, Circuit Judges.

FAGG, Circuit Judge.

George Esau Lewis appeals the district court's order denying his 28 U.S.C. § 2254 habeas petition. We reverse and remand with directions to grant the writ unless the state begins new trial proceedings within a reasonable period of time fixed by the district court.

At about 7:00 on a summer night in August 1988, a woman was walking home from a bar in Minneapolis when two men pulled her inside their car and sexually assaulted her. After three or four hours, the victim escaped. She went home and called the police. When asked to describe her assailants, the victim could only recall they were black males.

Eight days after the assault, the victim was in the same bar. She saw two men she believed were her assailants. The victim informed an off-duty police officer in the bar that the two men had raped her. Other officers arrived and arrested the two men: Lewis and his girlfriend's brother, Carter.

Lewis was tried first. The state's case against Lewis consisted of testimony by the victim, a forensic expert, and police officers. The victim testified there was no doubt in her mind that Lewis and Carter were the men who had raped her. She

continually referred to both men together and did not distinguish between them. The forensic expert testified blood and semen tests showed Lewis and Carter could have been the men who had raped the victim. The expert conceded, however, his test results were inconclusive. The police officers' testimony depended entirely on the victim's description of events. Lewis testified in his own defense. He admitted he was with Carter between 8:00 and 9:00 on the night of the assault, but denied involvement in the crime. Thus, the outcome of the trial depended almost entirely on whether the jury believed the victim's or Lewis's testimony. The jury convicted Lewis of first-degree criminal sexual conduct, and the judge sentenced him to 152 months imprisonment.

Carter's case proceeded to trial. Before the attorneys began their opening statements, the victim broke down emotionally in the presence of Carter and the jury. The victim told the judge she could not identify Carter. As a result, the judge dismissed Carter's case. Lewis's counsel then moved for a new trial based on newly discovered evidence—the victim's recantation of Carter's identification. The court denied the motion. The Minnesota Court of Appeals affirmed Lewis's conviction, but reduced his sentence to 130 months. After the Minnesota Supreme Court denied Lewis's petition for further review, Lewis filed this habeas action in federal district court. Relying on the Minnesota Court of Appeals decision, a magistrate judge issued a report recommending denial of Lewis's petition. The district court adopted the magistrate judge's recommendation and denied Lewis's petition.

■ Newly discovered evidence relevant to the constitutionality of a state prisoner's detention is a ground for federal habeas relief. *Townsend v. Sain*, 372 U.S. 293, 317, 83 S.Ct. 745, 759, 9 L.Ed.2d 770 (1963); *Cornell v. Nix*, 921 F.2d 769, 771 (8th Cir.1990). We grant habeas relief based on newly discovered evidence if the evidence " 'would probably produce an acquittal on retrial.' " *Cornell*, 921 F.2d at 771 (quoted case omitted); *see also Sand-*

*ers v. Sullivan*, 863 F.2d 218, 224–25 (2d Cir.1988) (state's failure to cure conviction after credible recantation of material testimony violates due process if recantation "would most likely affect the verdict"); *Mastrian v. McManus*, 554 F.2d 813, 822–23 (8th Cir.), *cert. denied*, 433 U.S. 913, 97 S.Ct. 2985, 53 L.Ed.2d 1099 (1977).

■ The Minnesota Court of Appeals concluded the recanted testimony would not produce a different result on retrial because the recantation could only be used to impeach the victim rather than to show Lewis's innocence. Recanted testimony, however, is grounds for relief from a conviction when it either bears on a witness's credibility or directly on the defendant's guilt. *See Williams v. Griswald*, 743 F.2d 1533, 1541 (11th Cir.1984) (quoting *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959)). The Minnesota Court of Appeals also stated the victim's recantation "might enhance the state's case against Lewis by suggesting [the victim] is careful and will not identify anyone unless she is sure of her identification." We disagree.

■ We think a comparison of the victim's earlier testimony that there was "no doubt in her mind" Lewis and Carter attacked her with her later recantation would destroy her credibility in the jury's eyes. The jury already had reason to doubt the victim's credibility. The state's forensic expert estimated the victim's blood alcohol level at the time of the assault was between .22 and .29%. The expert further testified that this level of intoxication would severely hamper the victim's ability to hear, see, and remember. Indeed, immediately after the assault, the victim's description of her assailants was very vague. Similarly, she could not identify the interior color of her assailant's car. Finally, she gave conflicting accounts of the number of times each man assaulted her. Considering the link between the two men established by both the victim and Lewis himself, we think the victim's recantation of Carter's identification casts serious doubt on the credibility of her identification of Lewis.

Given the victim's recantation, we do not believe a second jury would convict Lewis. Accordingly, we reverse the district court's judgment and remand this case with directions to grant the writ of habeas corpus unless the state begins new trial proceedings within a reasonable period of time fixed by the district court.