**UNITED STATES of America, Appellee,**

v.

**Terrance Kenneth PROVOST, Appellant.**

**No. 91–3423.**

United States Court of Appeals, Eighth Circuit.

Submitted March 13, 1992.

Decided July 2, 1992.

Rehearing and Rehearing En Banc Denied Aug. 10, 1992.

Robert C. Riter, Jr., Pierre, S.D., argued, for appellant.

Mikal G. Hanson, Asst. U.S. Atty., Pierre, S.D., argued, for appellee.

Before HANSEN, Circuit Judge, HEANEY, Senior Circuit Judge, and ROSENBAUM,* District Judge.

HANSEN, Circuit Judge.

Terrance Kenneth Provost appeals the district court's [1] denial of both his motion for a new trial under Rule 33 of the Federal Rules of Criminal Procedure and his request for an evidentiary hearing on that motion, 777 F.Supp. 774. We affirm.

I. *Background*

This is Provost's third appeal relating to his conviction for aggravated sexual abuse of his then ten-year-old half-sister, L.S., in violation of 18 U.S.C. §§ 1153, 2241(c), and 2245(2)(A). This court previously affirmed his conviction on direct appeal, *United States v. Provost*, 875 F.2d 172 (8th Cir. 1989), and affirmed the district court's denial of his first motion for a new trial under Rule 33. *United States v. Provost*, 921 F.2d 163 (8th Cir.1990). The facts underlying his conviction were discussed fully in the opinion affirming his conviction and will be recounted here only where necessary.

On June 26, 1987, Provost was convicted of sexually assaulting L.S. after a four-day jury trial. L.S. testified at the trial that Provost sexually assaulted her. Shirley Marvin, the natural mother of both Provost and L.S., testified on Provost's behalf at trial. During the trial, L.S. lived with her father. During the summer of 1990, custody of L.S. was awarded to Marvin, after allegations of sexual molestation were made against L.S.'s father. L.S. continues to live with Marvin.

After she started living with Marvin, L.S. began to see Dr. Frank Buzzetta, a clinical psychologist in Rapid City, South Dakota. Dr. Buzzetta filed an affidavit in support of Provost's second motion for a new trial. In his affidavit, Dr. Buzzetta indicates that on June 25, 1991, L.S. completely recanted her allegation that Provost had sexually assaulted her and told Dr. Buzzetta that her stepbrother had sexually abused her. Dr. Buzzetta said he encouraged her to tell her mother about the prior accusation being untrue. Dr. Buzzetta concluded that this recantation was truthful because L.S. had been open and honest with him in the past. Dr. Buzzetta further indicated that he believed it was easier for L.S. to accuse Provost than it was to accuse her stepbrother because of the fear of repercussions from accusing her stepbrother.

Marvin also filed an affidavit in support of Provost's second motion for a new trial. Marvin states that L.S. said she had lied about Provost sexually assaulting her. Marvin says L.S. said that she did not want to talk to Provost's lawyer but that she wanted to write to Provost instead.

Marvin filed a second affidavit in support of Provost's second motion for a new trial to disclose that L.S. had written letters to Provost to explain that she had lied and to apologize. Marvin included copies of the alleged letters with her second affidavit. The letters again focused the blame for the sexual assault on her stepbrother. The letters also noted how L.S. was aware of the stress on her mother and that she had observed the worry on her mother's face. One letter ended with a "P.S.—Mother wanted me to send both letters. So I shall."

After reviewing the affidavits and the letters, the district court denied the motion for a new trial without a hearing. The district court found that no exceptional circumstances existed which would warrant a hearing and that the decision could be made on the affidavits and the court's previous observation of the witnesses and familiarity with the record. The district court denied the motion for a new trial after finding that the recantation was not credible.

Provost argues on appeal that, at a minimum, the district court should have conducted an evidentiary hearing on his new

---

* The HONORABLE JAMES M. ROSENBAUM, United States District Judge for the District of Minnesota, sitting by designation.

1. The Honorable Donald J. Porter, then Chief Judge, United States District Court for the District of South Dakota, and now Senior United States District Judge for the District of South Dakota.

trial motion because exceptional circumstances are present. Provost further argues that even if a hearing is not required the district erred in concluding that he was not entitled to a new trial under Rule 33 on the basis of the recanted testimony.

## II. *Discussion*

### A.

■ Provost first argues that the district court improperly denied his request for an evidentiary hearing under Rule 33. In denying the request, the district court correctly noted the well-settled standards for determining the need for a hearing on a new trial motion based on newly discovered evidence. As we observed in denying Provost's first motion for a new trial, "[o]rdinarily, a motion for a new trial based on new evidence may be decided without a hearing resorting only to affidavits." *United States v. Provost*, 921 F.2d at 164 (citing *United States v. Bednar*, 776 F.2d 236, 239 (8th Cir.1985)). The district court has broad discretion in deciding whether an evidentiary hearing is necessary. *Provost*, 921 F.2d at 164. However, there may be exceptional circumstances which require a hearing. *United States v. Ward*, 544 F.2d 975, 976 (8th Cir.1976).

■ We find that the district court did not abuse its discretion in concluding there were no exceptional circumstances and in denying the request for a hearing. We previously have recognized that the need for a hearing is diminished for claims of recanted testimony where the trial judge observed the demeanor and credibility of the witnesses at trial, *Ward*, 544 F.2d at 976, or is otherwise thoroughly familiar with the record of the case. *Bednar*, 776 F.2d at 239.

Here, the district court was thoroughly familiar with the entire record of Provost's case. The same district court judge presided at the trial and decided the first motion for a new trial. He observed the original testimony of L.S. and Marvin. The only witness the trial judge did not previously observe testifying is Dr. Buzzetta. Provost argues that the fact the trial judge has not previously observed Dr. Buzzetta con-

stitutes an exceptional circumstance warranting a hearing. We disagree.

As the district court observed, the material part of Dr. Buzzetta's affidavit testimony seeks only to bolster the credibility of L.S.'s alleged recantation and little would be gained by receiving his oral testimony at a hearing. Moreover, the district court noted such testimony likely would be inadmissable expert testimony. *See United States v. Azure*, 801 F.2d 336 (8th Cir. 1986) (finding expert testimony inadmissable where its purpose is to put "stamp of believability" on a child witness' testimony).

Provost also argues that the recantation itself presents exceptional circumstances requiring a hearing. Provost asserts that the district court needed to see and hear L.S.'s recantation in order to determine whether it was credible, which is ultimately at issue in this matter. While this argument finds some support in case law from the Tenth Circuit, *United States v. Page*, 828 F.2d 1476, 1478 (10th Cir.), *cert. denied*, 484 U.S. 989, 108 S.Ct. 510, 98 L.Ed.2d 508 (1987) (finding "the trial court ordinarily must conduct an evidentiary hearing to evaluate both the credibility and impact of a recantation") (citing *United States v. Ramsey*, 726 F.2d 601, 605 (10th Cir.1984), *cert. denied*, 474 U.S. 1082, 106 S.Ct. 851, 88 L.Ed.2d 892 (1986)), it is at odds with our cases and the cases from the majority of other circuits.

In *Ward*, we found no exceptional circumstances existed in spite of the fact that the appellant moved for a new trial alleging the recantation of trial testimony by a prosecution witness. *Ward*, 544 F.2d at 976. In reaching that conclusion, we observed both that "courts look upon recantation with suspicion" and that the need for a hearing is diminished where the district court already has heard the original testimony of the witness who seeks to recant that testimony. *Id.* Likewise, in *Bednar* we found that a recantation of testimony did not constitute exceptional circumstances where the district court was familiar with the record of the case. 776 F.2d at 239.

The majority of the other circuits which have addressed this question, likewise, have found that it is within the district court's discretion to decide new trial motions based on recanted testimony without a hearing. *See, e.g., United States v. MMR Corp.,* 954 F.2d 1040, 1046 (5th Cir.1992); *United States v. Carbone,* 880 F.2d 1500, 1502 (1st Cir.), *cert. denied,* 493 U.S. 1078, 110 S.Ct. 1131, 107 L.Ed.2d 1037 (1989); *United States v. Di Paolo,* 835 F.2d 46, 51 (2nd Cir.1987). Hence, these circuits, like our circuit, recognize that a recantation of testimony, in and of itself, does not constitute exceptional circumstances which require a hearing. The Fifth Circuit has specifically observed very recently that while there are "certain unique situations" which normally call for hearings under Rule 33[2] a new trial motion based on recanted testimony does not present such a "unique situation." *MMR Corp.,* 954 F.2d at 1046. The Fifth Circuit concluded, as we did in *Ward,* that where the district court presided over the trial and observed the recanting witness's original testimony, the Rule 33 motion was "particularly suitable for ruling without a hearing." *Id.* (citing *United States v. Hamilton,* 559 F.2d 1370, 1373 (5th Cir.1977)).

Based on the foregoing authority, we conclude that the recanted testimony in this case is not an exceptional circumstance which required the district court to hold a hearing under Rule 33. The district court viewed L.S.'s testimony at trial, had the text of her alleged recantation, and was thoroughly familiar with the entire record of Provost's case. Hence, we find that the district court did not abuse its discretion in denying the request for a hearing because it had an adequate basis for reaching its conclusion that the recantation was not credible.

### B.

Provost contends that even if no hearing was required, the district court erroneously concluded that he was not entitled to a new trial. Again, the district court applied the well-settled standards from this circuit in denying the Rule 33 request for a new trial based on new evidence. In this circuit, the movant must meet the following test:

> (1) the evidence must be in fact newly discovered, that is, discovered since the trial; (2) facts must be alleged from which the court may infer diligence on the part of the movant; (3) the evidence relied upon must not be merely cumulative or impeaching; (4) it must be material to the issues involved, and (5) it must be of such nature that, on a new trial, the newly discovered evidence would probably produce an acquittal.

*Provost,* 921 F.2d at 164; *Bednar,* 776 F.2d at 238. The decision to grant a new trial on newly discovered evidence rests in the broad discretion of the district court and will not be reversed unless there is a clear abuse of discretion. *Ward,* 544 F.2d at 977 (citing *United States v. Bohn,* 508 F.2d 1145, 1150 (8th Cir), *cert. denied,* 421 U.S. 947, 95 S.Ct. 1676, 44 L.Ed.2d 100 (1975)).

The primary issue in this appeal is the fifth element of the new trial test—whether the recanted testimony as newly discovered evidence "would probably produce an acquittal" at a new trial. The question of whether recanted testimony "would probably produce an acquittal on retrial" rests in large part on the credibility of the recantation. *See Bednar,* 776 F.2d at 238–39. In *Bednar,* we observed that where a witness makes subsequent statements directly contradicting earlier testimony the witness either is lying now, was lying then, or lied both times. *Id.* at 239. Hence, if the court concludes that the recantation is not credible and does not affect the credibility of the original testimony, then it probably would not produce an acquittal on retrial.

The district court concluded that L.S.'s recantation was not credible. The district court began by correctly observing that new trial motions based on recanted testimony are immediately suspect. *Ward,* 544

---

**2.** The Fifth Circuit noted that those "unique situations" typically involve jury tampering, prosecutional misconduct, or third party confes-sion cases under Rule 33. *MMR Corp.,* 954 F.2d at 1046. However, the court noted none of those situations even compel a hearing. *Id.*

F.2d at 976. As the district court observed, the skepticism about recantations is especially applicable in cases of child sexual abuse where recantation is a recurring phenomenon. *See, e.g., Myatt v. Hannigan,* 910 F.2d 680, 685 n. 2 (10th Cir.1990) (noting that child recanting in sexual abuse case not atypical); *State v. Cain,* 427 N.W.2d 5, 8 (Minn.Ct.App.1988) (noting recantation is "frequent characteristic of child abuse victims"); *State v. Gallagher,* 150 Vt. 341, 350, 554 A.2d 221, 225 (1988) ("observing the high probability of a child victim recanting a statement about being sexually abused"); *see also* Summit, *Child Abuse Accommodation Syndrome,* 7 Child Abuse & Neglect 177, 188 (1973) ("whatever a child says about sexual abuse, she is likely to reverse it."). Recantation is particularly common when family members are involved and the child has feelings of guilt or the family members seek to influence the child to change her story. *See State v. Tharp,* 372 N.W.2d 280, 282 (Iowa Ct.App.1985) (upholding denial of new trial request based on 14 year old victim's recantation and noting that "where families are torn apart, there is great pressure on the child to make things right."); Cacciola, *The Admissibility of Expert Testimony in Intrafamily Child Sexual Abuse Cases,* 34 U.C.L.A. L.Rev. 175, 184–88 (1986) (noting susceptibility of child victim to family pressure and to recant the testimony to return things to "normal"). The Ninth Circuit very recently affirmed a district court's finding that a recantation by a child sex abuse victim was not credible and, therefore, was insufficient to support a Rule 33 new trial motion where the victim was subject to the influence of members of her immediate family including her mother. *United States v. Leroy George,* 960 F.2d 97, 101 (9th Cir.1992).

The district court found that on the record as a whole the recantation lacked credibility and found specifically that family pressure, especially from her mother, likely influenced the recantation. These findings are not clearly erroneous.

L.S. forcefully testified at trial that Provost sexually assaulted her. Her testimony was carefully cross-examined. A jury found the testimony credible and convicted Provost.

L.S. maintained those accusations through Provost's first motion for a new trial. We recognized that, even though she also had begun to accuse her stepbrother of sexually abusing her, she never retracted her statements that Provost had sexually assaulted her. *United States v. Provost,* 921 F.2d at 165. We noted that several affidavits in support of that motion for new trial stated that L.S. continued to talk about being assaulted by both Provost and her stepbrother. *Id.*

L.S. did not recant her trial testimony for more than four years. It occurred only after we made note of the fact that she had not recanted when we decided the first new trial motion adverse to the appellant. *See* 921 F.2d at 165. Her recantation occurred only after Marvin gained custody of her and just as the two-year statute of limitations under Rule 33 for new trials based on newly discovered evidence was about to expire. Marvin, the natural mother of both Provost and L.S., has opposed L.S.'s accusations against Provost from the beginning and has sought to exert her influence in the case at all stages. Even the letters which Marvin attributes to L.S. demonstrate that L.S. is acutely aware of her mother's feelings about this case. At one point one of the letters notes that L.S. feels sorry for her mother and is worried about the stress her mother is under. The last letter ends with the notation "P.S.—Mother wanted me to send both letters. So I shall."

On this record, the district court found that L.S.'s recantation was influenced by family pressures and other factors. The district court concluded that her recantation was not credible. This conclusion is amply supported by the record and is not clearly erroneous. Hence, it was not an abuse of discretion to deny the motion on the merits.

Provost asserts that our recent decision in *Lewis v. Erickson,* 946 F.2d 1361 (8th Cir.1991), supports his position that the district court should grant him a new trial. In

*Lewis,* the appellant was convicted of sexual assault. The victim later recanted her sworn identification of appellant's co-defendant. The appellant requested habeas corpus relief on the grounds of newly discovered evidence of the victim's recantation. We found this evidence was relevant to the constitutionality of appellant's conviction. *Id.* at 1362. We granted a new trial finding that the recantation "would probably produce an acquittal on retrial." *Id.*

The *Lewis* case is distinguishable. In *Lewis,* the factual record indicated that the victim's recantation was credible and probably would produce an acquittal at a new trial. The victim originally identified both the appellant and his co-defendant as her attackers. At appellant's trial she testified she was certain that they were the two men who raped her. Appellant was convicted. At the co-defendant's trial, however, the victim broke down before the trial started and told the judge that she was not able to identify the co-defendant.

We found a number of reasons that her recantation would probably produce an acquittal if appellant received a new trial. We noted that the victim previously had testified that there was "no doubt in her mind" that the appellant and the co-defendant were the attackers. She had consistently referred to the two men co-extensively. We noted that a jury already had reason to doubt her credibility. At the time of the attack, her blood alcohol level was between .22% and .29%, a level which an expert testified would impair her ability to see, hear, and remember. The victim also was unable to provide important specific details about the incident. We found that the recantation would destroy her credibility in the eyes of a jury on retrial.

In *Lewis,* the victim was an adult and there was no indication that her recantation was influenced by pressure from anyone or by any other factors. The victim recanted before the co-defendant's trial could even begin, not more than four years after her original trial testimony. Moreover, in *Lewis* there were serious credibility problems with the victim's original testimony, including the victim's intoxicated state at the time of the attack. *Lewis,* therefore, does not apply here.

We additionally must note that Provost has urged us to reexamine our test for determining when to grant new trials under Rule 33 based on recantations by a prosecution witness and to adopt the test set forth in *Larrison v. United States,* 24 F.2d 82 (7th Cir.1928). *See* Tim A. Thomas, *Recantation of Testimony of Witness As Grounds For New Trial–Federal Criminal Cases,* 48 A.L.R.Fed. 60 (1989) (comparing various tests used in new trial motions under Rule 33 based on recanted testimony). We decline to do so. Even if we were inclined to do so, which we are not, one panel of this court may not reverse or overturn a decision by an earlier panel. *Bressman v. Farrier,* 900 F.2d 1305, 1318 (8th Cir.1990); *Foss v. United States,* 865 F.2d 178, 181 (8th Cir.1989).

For the foregoing reasons, we affirm.