# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### December 9, 2003 Session

## STATE OF TENNESSEE v. JOEY THOMAS HOLLAND

**Direct Appeal from the Circuit Court for Robertson County**
**No. 01-0174     Michael R. Jones, Judge**

---

**No. M2003-00988-CCA-R3-CD - Filed March 9, 2004**

---

The Appellant, Joey Thomas Holland, appeals the judgment of the Robertson County Circuit Court denying his petition for writ of error coram nobis.  Holland was convicted by a jury of two counts of aggravated sexual battery of his minor son.  Holland alleges that his convictions should be set aside because the victim recanted his trial testimony.  After a thorough review of the record, we affirm the decision of the trial court denying the petition.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed.**

DAVID G. HAYES, J., delivered the opinion of the court, in which DAVID H. WELLES and ALAN E. GLENN, JJ., joined.

Roger Eric Nell, District Public Defender; Charles S. Bloodworth, Assistant District Public Defender, Springfield, Tennessee, for the Appellant, Thomas Holland.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Helena Walton Yarbrough, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and Dent Morriss, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

On April 24, 2001, the Appellant was indicted by a Robertson County jury for two counts of aggravated sexual battery.  In Count 1, the Appellant was charged with touching the victim's penis over his clothing during September of 1995.  In Count 2, alleged to have occurred in February of 1999, he was charged with rubbing the victim's penis under his clothing.  The victim was the Appellant's son, who was under the age of thirteen at the time of these events.  The Appellant was tried by a jury on September 5, 2001.  The trial court outlined the relevant trial testimony as follows:

The victim testified at trial that while he, his brother, mom and dad lived on State Line Road that his father (the defendant) while they were alone and in the living room "put his hand up underneath my pants. He was rubbing my penis." Further, the victim testified that when he was 9 [years old] living in a trailer that he (the victim) was in a recliner and the defendant placed his hands under my pants and rubbed my penis. On both occasions the victim was unable to remember what happened that caused the defendant to stop. The victim stated he was telling the truth. The cross examination of the victim established that the victim had made a prior statement to Mike Noland.

Mr. Noland testified that he requested the defendant to come to the DHS building. The defendant appeared on one occasion, but there was no interview. The defendant came back on April 10, 2001, and made a statement. The statement was made an exhibit and read to the jury. Specifically the defendant admitted touching the victim's penis in September 1995 and again approximately in February 1999. Specifically the defendant stated that the victim was sitting in a recliner. Prior to the statement being made, the defendant was advised that the victim had made these accusations.

Cross examination of Mr. Noland led to the denial from Mr. Noland that he told the defendant that by agreeing to this statement that it would help the defendant to regain custody.

The defendant testified that the dates, addresses and what happened came from the victim's statement to Mr. Noland. The defendant testified that he agreed to the statement because - "It would help me and Vanessa get custody back. And I was already going through anger management classes and that it would go lighter if I signed the confession. If I didn't sign the confession, the District Attorney would be out to get me if I went to trial." On cross examination the defendant testified that the statement was not true. The defendant volunteered that "I was told this would never come to trial. This would - never be pursued if I signed a confession."

Mr. Noland was recalled by the defense and testified that the victim was scared for his mother when she and the defendant would fight.

Following the conclusion of proof, the Appellant was convicted of both counts of aggravated sexual battery, class B felonies. A sentencing hearing was held on October 12, 2001, during which the trial court sentenced the Appellant to ten years on each count to run concurrently. The Appellant did not pursue a direct appeal of his convictions or sentence.

On August 27, 2002, the petitioner filed a petition for writ of error coram nobis, alleging that he was entitled to a new trial because the victim "had retracted his statements and now would state

under oath that no molestation had in fact occurred." An evidentiary hearing was held on February 21, 2003, during which the following evidence, as summarized by the trial court, was presented:

> . . . [A] taped interview of the victim . . . was made on December 5, 2002. The victim testified that neither event had occurred. He stated that he stated that the events did occur "because I didn't want my dad beating on my mom no more and I just said that to get him out of the house." The victim further testified that he told his mother that his testimony was not true because "we wasn't getting along and stuff and I felt like I need my dad." On cross examination the victim stated that he did not tell his foster mom that his testimony was not true. This testimony was very emotional with tears, hanging of the head and mere nods to some questions.
>
> Mike Noland testified that the victim was interviewed at Jo Byrns school on March 20, 2001. The notes of the statement were read to the defendant when he was interviewed. In this statement the victim stated that the defendant touched his penis about 2 years ago while they were living in Adams area in a trailer owned by Max Baggett. The child demonstrated the actions of the defendant. On the second episode the victim stated that he was at home because the bus did not pick them up and that the defendant touched his penis.

On March 28, 2003, the trial court issued a detailed opinion denying the petition, and this timely appeal followed.

## ANALYSIS

In this appeal, the Appellant argues that the judgments of conviction should be set aside and a new trial ordered because the victim, who testified against the Appellant at trial, recanted his testimony. A writ of error coram nobis is an extraordinary remedy by which the trial court may provide relief from a judgment under narrow and limited circumstances. *State v. Mixon*, 983 S.W.2d 661, 666 (Tenn. 1999). The remedy is available by statute to a criminal defendant in Tennessee. *See* Tenn. Code Ann. § 40-26-105 (2003). This statute, in pertinent part, provides:

> Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial. The issue shall be tried by the court without the intervention of a jury, and if the decision be in favor of the petitioner, the judgment complained of shall be set aside and the defendant shall be granted a new trial in that cause.

*Id*.

Recanted testimony may qualify as newly discovered evidence. *Mixon*, 983 S.W.2d at 672. A new trial should be granted on the basis of newly discovered recanted testimony, however, only if:

> (1) the trial court is reasonably well satisfied that the testimony given by the material witness was false and the new testimony is true; (2) the defendant was reasonably diligent in discovering the new evidence, or was surprised by the false testimony, or was unable to know of the falsity of the testimony until after the trial; and (3) the jury might have reached a different conclusion had the truth been told.

*Id*. at 673 n.17 (citations omitted). The decision to grant or deny a petition for writ of error coram nobis based on newly discovered evidence lies within the sound discretion of the trial court. *See* Tenn. Code Ann. § 40-26-105; *State v. Hart*, 911 S.W.2d 371, 375 (Tenn. Crim. App. 1995).

As such, we will not overturn the decision of the trial court in this case absent a showing of abuse of discretion. In its opinion denying the petition, the trial court, applying *Mixon*,[1] found that:

> Had this victim testified at the trial of this case that nothing occurred, a motion for judgment of acquittal would have been granted. Normally prior inconsistent statements would not be admitted for the truth of the matter asserted. It would be a question of law for the court to have considered whether or not the confession or admission was corroborated. The jury might well have reached a different conclusion if the victim had testified that these events did not occur. It is clear that the defendant was diligent in discovering the recantation. Prongs 2 and 3 above are satisfied.

> The most difficult part of this case is (1) - is this court reasonably well satisfied that the victim's testimony at trial was a lie and that he was telling the truth at the last hearing. The victim testified that he made the original statements to get rid of his dad so he would not beat his mother anymore. He testified that he recanted because he was mad at his mother at the time and wanted his dad. During the time that he was in foster care, he made no recantation.

---

[1] The Appellant argues that the trial court applied the wrong standard in reaching its decision. The Appellant, relying on *State v. Workman*, 111 S.W.3d 10, 18 (Tenn. Crim. App. 2002), submits that the correct standard is: (1) whether the newly proffered testimony is, in fact, a recantation and, (2) if so, "the court must go forward and determine that the new testimony, if considered in connection with all of other evidence in the case, created a 'reasonable probability' that 'may have resulted in a different judgment.'" However, the Appellant misreads *Workman*. In *Workman*, the court acknowledged that *Mixon* was the proper standard to apply to newly discovered recantation testimony. *Id*. at 17. The court then proceeded to clarify the coram nobis statute, Tennessee Code Annotated section 40-26-105, and prong (3) of the *Mixon* analysis, concluding that the "reasonable probability" standard was the proper interpretation of the "may have resulted in a different judgment" language of the statute and the "might have reached a different conclusion had the truth been told" language of *Mixon*. *Id*. at 18. Ultimately, the *Workman* court found that a *Mixon* analysis was inapplicable to the facts of that case because the testimony given was not a recantation. *Id*.

-4-

. . . There are factors on each side of this question. His testimony at trial was believed by the jury; it was compelling, to the point and full of specifics. His testimony at the hearing was emotional as one should expect.

The jury found beyond a reasonable doubt that the defendant did do those acts testified to by the victim. In doing so, the jury rejected the testimony of the defendant that he did not commit either act and confessed only to help him regain custody. The testimony of the defendant at trial and at the time of the hearing as to why he made the statement are just not reasonable. Applying common sense and reason, this court can not accept that reasoning by the defendant just as the jury could not. Placing the confession with the trial testimony, this court is more than reasonably well satisfied that the testimony of the victim at the time of the trial was true; therefore, this court is not reasonably well satisfied that the testimony given by the victim at the trial was false and the court is not reasonably well satisfied that the testimony given by the victim at the hearing was true.

In this matter, the trial court conducted an evidentiary hearing on the Appellant's claim of recanted testimony at which the victim; his mother, Vanessa Holland; and Mike Noland with the Department of Children Services testified. In March of 2001, the victim and his younger brother were removed from their parents' home and placed in foster care. The victim remained in foster care at the time of trial; however, he was returned to his mother's custody approximately two and one-half months following the conclusion of trial proceedings. It was not until the victim returned to his mother's custody that he claimed the instances of sexual conduct did not happen. While in his mother's care, the victim read letters from the Appellant that stated "how hard it is to be in prison" and "how he wants to come home, be a family again." Also at this time, the victim was not getting along with his mother and felt like he needed his father. Furthermore, according to Mike Noland, the victim's mother told him, prior to trial, that she believed the Appellant abused the victim. As noted by the trial court, the Appellant's reasons for confessing to these crimes are unreasonable, *i.e.*, it is not reasonable to conclude that admitting to sexual abuse of one's child would help that individual regain custody of the child. Moreover, at trial, the victim gave specific testimony about two instances of improper sexual contact by his father.

Since the same trial judge presided at both the trial and coram nobis hearing, the judge had a unique opportunity to determine, to the extent that it is possible to know when another person is being untruthful, at which occasion the victim testified falsely. *Terry Stephens v. State*, No. M2001-00023-CCA-R3-CO (Tenn. Crim. App. at Nashville, Dec. 19, 2001) (citing *Mendiola v. Schomig*, 224 F.3d 589, 593 (7th Cir. 2000)). Applying the dictates of *Mixon*, the court determined that the false testimony occurred at the hearing and, based upon our review of the entire record including the

trial transcript, we cannot say that the court abused its discretion in so concluding.  Accordingly, we affirm the order of the trial court denying the petition for writ of error coram nobis.[2]

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____

DAVID G. HAYES, JUDGE

---

[2]Although it is not the basis for our holding in this case, we note that courts are skeptical of recantations in sexual abuse cases involving children for, in such cases, "recantation is a recurring phenomenon." *Terry Stephens*, No. M2001-00023-CCA-R3-CO (quoting *United States v. Provost*, 969 F.2d 617, 621 (8th Cir. 1992)).