

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

---

## NO. WR-78,989-01

---

**Ex parte STEVEN MARK WEINSTEIN, Applicant**

---

**ON APPLICATION FOR A WRIT OF HABEAS CORPUS
IN CAUSE NO. 1167730-A IN THE 339ᵀᴴ DISTRICT COURT
OF HARRIS COUNTY**

---

**KELLER, P.J., filed a concurring opinion in which PRICE, J., joined.**

We filed and set this case to determine whether the State's *unknowing* use of false testimony calls for the same standard of materiality as the State's *knowing* use of false testimony. The Court appears to sidestep this issue, but to the extent the Court's opinion can be construed as weighing in on the issue, it comes to the wrong conclusion.

The Court says that the standard of materiality for the State's use of false testimony is "a reasonable likelihood that it affected the judgment of the jury" and, in some parts of its materiality discussion, it cites to *Giglio v. United States*[1] and to *Ex parte Fierro*.[2] *Giglio* appears to have used

---

[1]  405 U.S. 150 (1972).

[2]  934 S.W.2d 370 (Tex. Crim. App. 1996).

the *Napue*[3] standard on the ground that a deliberate deception occurred in that case.[4] *Fierro* involved

the knowing use of false testimony and employed the *Napue* standard of materiality, though it also

employed a more onerous harm standard because the claim, presented for the first time on habeas,

could have been presented at trial and on direct appeal.[5] The Supreme Court, which has framed the

*Napue* standard as "*any* reasonable likelihood that the false testimony could have affected the jury's

verdict," has held that the standard is essentially the same as the *Chapman*[6] harmless error test for

constitutional errors on direct appeal.[7] The *Chapman* standard has been framed as "whether there

is a reasonable possibility that the evidence complained of might have contributed to the conviction,"

or whether a court is convinced "beyond a reasonable doubt that the error complained of did not

contribute to the verdict obtained."[8] The *Napue*/*Chapman* standard is the standard of materiality that

applies to claims involving the State's *knowing* use of false testimony.[9]

The Court does not dispute the habeas trial court's conclusion that today's case involves the

State's *unknowing* use of false testimony. It is unclear to me whether the Court's use of the

"reasonable likelihood" language (and citations to *Giglio* and *Fierro*) is intended to signify the use

of *Napue*/*Chapman* standard or whether the Court's omission of the word "any" from the standard

---

[3] *Napue v. Illinois*, 360 U.S. 264 (1959).

[4] *Giglio*, 405 U.S. at 153-54. *See also Smith v. Phillips*, 455 U.S. 209, 220 n.10 (1982) (citing *Giglio* and *Napue* as applying in cases of "egregious prosecutorial misconduct").

[5] 934 S.W.2d at 372, 374-75 & n.10.

[6] *Chapman v. California*, 386 U.S. 18 (1967).

[7] *United States v. Bagley*, 473 U.S. 667, 679 n.9 (1985) (emphasis added).

[8] *Id.*

[9] *Id.*

is intended to signify that a different, less-favorable-to-the-defendant standard is being employed.

I write separately to emphasize that the standard of materiality for the State's *unknowing* use of false evidence (a claim not recognized by the Supreme Court) should be higher than the standard employed by the Supreme Court for the State's *knowing* use of false evidence.

### A. There are good reasons for having different standards for the knowing versus unknowing use of false evidence.

There are three good reasons for imposing a higher standard of materiality for unknowing use than for knowing use: (1) state action, (2) finality, and (3) the analytical nature of the claims. First, I address state action. The United States Constitution's requirement of due process that is applicable to the States is found in the Fourteenth Amendment.[10] A necessary component of any Fourteenth Amendment due-process claim is "state action."[11] Even the most outrageous behavior by a private citizen will not by itself establish "state action" for due-process purposes.[12] When the prosecution knowingly uses false testimony, state action is self-evident.[13] Even when a witness is not a member of the prosecution team, state action is arguably present if the witness is a state-

---

[10] U.S. CONST. Amend. 14, § 1 ("nor shall any State deprive any person of life, liberty, or property, without due process of law.").

[11] *See id.*; *United States v. Morrison*, 529 U.S. 598, 621 (2000) ("[T]he Fourteenth Amendment, by its very terms, prohibits only state action. The principle has become firmly embedded in our constitutional law that the action inhibited by the first section of the Fourteenth Amendment is only such action as may fairly be said to be that of the States. That Amendment erects no shield against merely private conduct, however discriminatory or wrongful.") (internal quotation marks omitted); *Colorado v. Connelly*, 479 U.S. 147, 165 (1986).

[12] *Connelly*, 479 U.S. at 166. *See also Morrison*, 529 U.S. at 621.

[13] *See Case v. Hatch*, 133 N.M. 20, 24, 183 P.3d 905, 909 (2008) ("The knowing prosecutorial use of perjured testimony clearly implicates the necessary state action for a violation of due process.").

government employee testifying as such.[14] But when the witness is a private citizen, as in the present case, state action is supplied by neither the prosecutor's intent nor the witness's status. It must, then, be supplied by the fact that the false evidence has actually adversely affected state judicial proceedings.[15] A mere possibility that the proceedings have been affected is not enough.

The second reason is finality. A prosecutor who knowingly uses false evidence should understand that the case is a ticking time bomb that is likely to explode the moment the defendant discovers what has happened. The State can hardly maintain a significant expectation of finality in proceedings in which the prosecutor has acted in such a way.[16] What the State has is a minimal interest in finality: the conviction is maintained if there is no reasonable possibility that the false evidence would have changed the result. The State's finality interests may become more significant if the defendant fails to raise the claim at his first opportunity or if the defendant is dilatory in raising his claim. But so long as the defendant has raised a knowing-use claim at his first opportunity and with reasonable promptness, the State's finality interest in the conviction in the face of such a claim

---

[14] *See Estrada v. State*, 313 S.W.3d 274, 287-88 (Tex. Crim. App. 2010) (testimony of A.P. Merillat). *See also Devoe v. State*, 354 S.W.3d 457, 467 (Tex. Crim. App. 2011) (describing Merillat as "a senior criminal investigator for the Texas Special Prosecution Unit").

[15] *See Sanders v. Sullivan*, 863 F.2d 218, 222, 224 (2nd Cir. 1988) (observing that many jurisdictions require "prosecutorial, or at least official government involvement" to "constitute[] the requisite state action necessary to a due process violation" and concurring with these jurisdictions' disapproval of "the principle that a due process violation occurs when, without more, perjured testimony is introduced at trial," but holding that sufficient state action is shown when a credible recantation of testimony "would most likely change the outcome of the trial").

[16] *See Mooney v. Holohan*, 294 U.S. 103, 111 (1935) (Due process "cannot be deemed to be satisfied by mere notice and hearing if a State has contrived a conviction through the pretense of a trial which in truth is but used as a means of depriving a defendant of liberty through a deliberate deception of court and jury by the presentation of testimony known to be perjured. Such a contrivance by a State to procure the conviction and imprisonment of a defendant is as inconsistent with the rudimentary demands of justice as is the obtaining of a like result by intimidation.").

is minimal.

But the State's interest in finality is substantial when the use of false testimony is unknowing. In that situation, the State has not tried to subvert the system and may be as likely as the defendant to be surprised by the revelation that a witness has lied or that some testimony or other evidence introduced at trial was false. And the adversary system is designed to ferret out the truth from conflicting evidence.[17] Sometimes apparent conflicts in testimony can be reconciled, but it is often the case that not all of the testimony can be the truth. Fact witnesses may have irreconcilable accounts about what happened, or there may be a battle of experts who take diametrically opposed positions. We generally expect the adversary system to handle these types of conflicts, even when we know that *someone* must not be telling the truth.[18] If the State knows certain evidence is false, we expect the State to disclose that fact, but if the State is not aware of the falsity, we generally expect the adversary system to deal with it. It stands to reason, then, that we would want to overturn the results of a trial on the basis of the unknowing use of false evidence only if we are convinced that the false evidence probably changed the result.[19]

---

[17] *See Penson v. Ohio,* 488 U.S. 75, 84 (1988) ("The paramount importance of vigorous representation follows from the nature of our adversarial system of justice. This system is premised on the well-tested principle that truth—as well as fairness—is best discovered by powerful statements on both sides of the question.") (internal quotation marks omitted).

[18] *See State v. Lotter*, 278 Neb. 466, 479, 771 N.W.2d 551, 562 (2009) ("A defendant has a due process right to a trial process in which the truth-seeking function has not been corrupted. But it is axiomatic that the truth-seeking process is not defective simply because not all evidence weighed by the trier of fact was actually true. The protections of a 'fair trial' granted the defendant in the criminal process are there precisely because some of the evidence against the defendant may be disputed.").

[19] *See Sanders*, 863 F.2d at 225 ("This standard of scrutiny [heightened materiality requirement] meets at least some of the criticism made by many of the cases rejecting this view" based on concerns of finality. Also citing Carlson, *False or Suppressed Evidence: Why a Need for*

The third reason is the analytical nature of the claims. The knowing use of false evidence is prosecutorial misconduct.[20] In addition, while the knowing use of false evidence can be characterized as misconduct subject to a materiality standard, it can also be legitimately characterized as "error subject to harmless-error review,"[21] with the *Chapman* test simply being the harm standard that applies to any constitutional error that is not structural.[22] That is, a prosecutor's knowing use of false evidence could itself be seen as the constitutional violation, without regard to materiality, with that constitutional violation then being subject to a harm analysis. By contrast, the unknowing use of false evidence is *not* prosecutorial misconduct and cannot, *by itself*, be legitimately characterized as a constitutional error subject to harmless error review. A defendant cannot be said to have suffered a due process violation merely because a private citizen has testified falsely. Only when a materiality standard is added—a standard more onerous than the constitutional harmless error test—can the unknowing use of such false evidence rise to the level of a due process violation.

### B. The holdings in out-of-state cases confirm a higher materiality standard for the State's unknowing use of false evidence than for knowing use.

The Supreme Court has never held that the State's unknowing use of false evidence can

---

the Prosecutorial Tie?*, 1969 DUKE L.J. 1171, 1187-88, for the proposition that a "more liberal approach" that permits relief to be granted when the prosecutor has unknowingly used false evidence "would threaten only those final judgments which merit unsettlement" so long as the rule is "[h]edged with the appropriate standards requiring the defendant to demonstrate materiality"); *Case*, 144 N.M. at 25-26, 183 P.3d at 910-11 (adopting a heightened materiality requirement due to concerns about the eroding effects of the passage of time on the evidence available for a retrial).

[20] *Bagley*, 473 U.S. at 680.

[21] *Id.* at 679-80.

[22] *See id.* at 679-80 & n.9.

constitute a due process violation.[23] Aside from Texas, several jurisdictions, led by the Second

Circuit, have decided that it can, with a higher standard of materiality than the standard for knowing

use.[24] Some courts have declined to address the issue on the ground that the defendant had not

satisfied the rigorous materiality standard set forth by the Second Circuit in *Sanders*.[25] The Fifth,

---

[23] *See Cash v. Maxwell*, 132 S. Ct. 611, 615 (2012) (Scalia, J., dissenting to refusal to grant certiorari) ("To make matters worse, having stretched the facts, the Ninth Circuit also stretched the Constitution, holding that the use of Storch's false testimony violated the Fourteenth Amendment's Due Process Clause, whether or not the prosecution knew of its falsity. We have never held that, and are unlikely ever to do so. All we have held is that 'a conviction obtained through use of false evidence, *known to be such by representatives of the State*, must fall under the Fourteenth Amendment.' This extension of due process by the Ninth Circuit should not be left standing.") (internal citations omitted, emphasis by Scalia); *Gould v. Comm'r of Corr.*, 301 Conn. 544, 570 n.18, 22 A.3d 1196 n.18 (2011) (noting the New Mexico Supreme Court's observation that "[t]he United States Supreme Court has not addressed the issue"); *Lotter*, 278 Neb. at 478-79, 771 N.W.2d at 562 ("The U.S. Supreme Court, while holding that affirmative prosecutorial involvement in perjured testimony may interfere with the fairness of the trial process, has never held that the prosecutions unknowing reliance at trial on perjured testimony violates any constitutional right.").

[24] *Sanders*, 863 F.2d at 222-23 (when a credible recantation "would most likely change the outcome of the trial"); *Lewis v. Erickson*, 946 F.2d 1361, 1362 (8th Cir. 1991) (if the new evidence "would probably produce an acquittal on retrial"); *Commonwealth v. Spaulding*, 991 S.W.2d 651, 657 & n.1 (Ky. 1999) (In unknowing use cases, "the burden remains on the defendant to show . . . that the conviction probably would not have resulted had the truth been known." This part of the "test places a heavier burden on the defendant than does the test used when perjured testimony is introduced with knowledge or acquiescence of the prosecution."); *Case*, 144 N.M. at 24-26, 183 P.3d at 909-11 (holding that "we must distinguish between a 'knowing prosecutorial use of perjured testimony' . . . and a 'mere repudiation of former testimony or admission of perjury,'" and emphasizing the need in the latter context for a "firm belief" that the defendant would most likely not have been convicted). *See also Ex parte Napper*, 322 S.W.3d 202, 242 n.151 (Tex. Crim. App. 2010) (recognizing that "[t]he Second Circuit has suggested that the unknowing use of perjured testimony violates due process if a stronger showing of materiality or harm is made than is required by the Chapman standard."); *Ex parte Chavez*, 371 S.W.3d 200, 212-13 (Tex. Crim. App. 2012) (Keller, P.J., dissenting) (discussing *Sanders*); *Ex parte Carmona*, 185 S.W.3d 492, 497-98 (Tex. Crim. App. 2006) (Hervey, J., dissenting) (citing *Sanders*).

[25] *Smith v. Roberts*, 115 F.3d 818, 820 & n.2 (10th Cir. 1997) (because "the circumstances here do not present the compelling situation upon which the court grounded its ruling in *Sanders*, we conclude this is not the case to revisit" those prior precedents); *State v. Bader*, 148 N.H. 265, 285-86, 808 A.2d 12, 32-33 (2002) (rejecting the defendant's claim while observing that *Sanders*

Seventh, and Eleventh Circuits, along with the States of Illinois and Nebraska, have expressly rejected the Second Circuit's expansion of due process to the unknowing use of false evidence and hold, instead, that due process is violated only if false evidence is knowingly used by the prosecution.[26] The Ninth Circuit appears to recognize a due process violation if the prosecution knew or should have known that the testimony was false.[27] Whether that court recognizes a due process claim when the prosecution is completely without fault is unclear, but the cases in which such a claim may be recognized involve facts that would meet the Second Circuit's high standard of materiality.[28]

With the possible exception of the Ninth Circuit, I am unaware of any jurisdictions applying the *Chapman* standard of materiality to the unknowing use of false evidence. Instead, courts that

---

and other cases imposed a more rigorous materiality requirement for unknowing use than for knowing use of false evidence).

[26] *Smith v. Black*, 904 F.2d 950, 962 (5ᵗʰ Cir. 1990); *Schaff v. Snyder*, 190 F.3d 513, 529-30 (7th Cir. 1999); *Jacobs v. Singletary*, 952 F.2d 1282, 1287 n.3 (11ᵗʰ Cir. 1992); *People v. Brown*, 169 Ill. 2d 94, 106, 660, N.E.2d 964, 970 (1995) ("In the absence of an allegation of the knowing use of false testimony, or at least some lack of diligence on the part of the State, there has been no involvement by the State in the false testimony to establish a violation of due process . . . . Without such involvement, the action of a witness falsely testifying is an action of a private individual for which there is no remedy under the due process clause."); *Lotter*, 278 Neb. at 479, 481, 771 N.W.2d at 562, 563 ("[T]he presence of perjury by a key witness does not, in and of itself, present a constitutional violation.").

[27] *See Jones v. Ryan*, 691 F.3d 1093, 1102 (9ᵗʰ Cir. 2012) ("To prevail on a due process claim based on the presentation of false evidence, a petitioner must show that (1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) . . . the false testimony was material.") (ellipsis in original, internal quotation marks omitted).

[28] *Maxwell v. Roe*, 628 F.3d 486, 506-08 (9ᵗʰ Cir. 2010) (facts suggest unknowing use of false testimony but unclear if court was treating it as such, but the court observed that, consistent with fact patterns in earlier cases, the falsely testifying witness was the "make or break" witness for the prosecution and the witness's testimony was the "centerpiece" of the prosecution's case).

recognize a due process violation based upon the unknowing use of false evidence, excepting possibly the Ninth Circuit, seem to uniformly agree that a due-process violation based on unknowing use requires a higher standard of materiality. Given that it is currently a controversial proposition to even recognize a due-process violation flowing from the State's unknowing use of false evidence, the higher standard of materiality is an important factor used to overcome objections to such recognition.[29]

I respectfully concur in the Court's judgment.

Filed: January 29, 2014
Publish

---

[29] *See* this opinion, ante.