# United States Court of Appeals
### For the Eighth Circuit

_____

No. 18-3674

_____

United States of America

*Plaintiff - Appellee*

v.

Terrell Devon Lillybridge

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: October 14, 2019
Filed: December 13, 2019
[Published]

_____

Before LOKEN, SHEPHERD, and STRAS, Circuit Judges.

_____

PER CURIAM.

Terrell Devon Lillybridge pleaded guilty to a felon-in-possession charge, served his forty five month prison sentence, and began a three year term of supervised release in November 2017. On May 10, 2018, police officer Kory Griffin responded to a 911 domestic disturbance call at the apartment of S.F. in Davenport, Iowa. Based on what S.F. reported to Officer Griffin, Lillybridge was charged in state court with

domestic abuse simple assault, and the Probation Office moved to revoke supervised release based on the May 10 incident. The state assault charges were dismissed in September 2018. A revocation hearing was held on November 27. The primary witnesses were Officer Griffin for the government and S.F. for the defense. After hearing the testimony and argument, the district court[1] found that S.F.'s hearing testimony was not credible, revoked Lillybridge's supervised release, and sentenced him to eight months imprisonment followed by fifteen months supervised release. Lillybridge appeals the finding of a supervised release violation and further argues the revocation sentence is substantively unreasonable. We affirm.

At the hearing, Officer Griffin testified that he met with S.F. in responding to the domestic disturbance call. S.F. said she was assaulted by Lillybridge, her boyfriend, during an argument at her apartment some six weeks after their child was born. The apartment was in disarray. S.F. said Lillybridge threw her on the bed, put his hands on her neck, and hit her twice in the head with a closed fist. Lillybridge also broke her son's cell phone, punched a hole in the ceiling with the TV, and took her car keys and her work and personal cell phones when he left. Griffin noted scratches on S.F.'s arm. S.F. said she did not want Lillybridge to go to jail but expressed great concern that her cell phones be returned or her job would be in jeopardy. Griffin contacted Lillybridge, who denied taking the phones. The next day, S.F. called the police station to report Lillybridge had returned the phones. Griffin acknowledged that Lillybridge was charged with simple domestic assault, a misdemeanor, because S.F. was not injured. The government introduced twelve photos of the scene: the son's broken cell phone, a broken picture frame, the hole in the ceiling, the TV that caused the hole with ceiling dust on one corner, disarray in the bedroom including an overturned wax heater, two photos of the scratches on S.F.'s arm, and a broken child's toy found in the dumpster.

---

[1]The Honorable Stephanie M. Rose, United States District Judge for the Southern District of Iowa.

S.F. testified that she called 911 on May 10 and met with Griffin after her argument with Lillybridge. S.F. acknowledged accusing Lillybridge of the violent conduct to which Griffin had testified, but testified that the accusations were false "to make him hurt as much as I was hurting at that moment." S.F. testified that Lillybridge did not choke or punch her, and that she suffered the scratches on her arm at work. The damage to her son's phone was caused when she knocked it out of his hand throwing Lillybridge's heavy tote into the hallway along with his other belongings. S.F. said she broke the picture frame and caused the hole in the ceiling when she lifted the TV. Lillybridge left with her phone to call for a ride, not to prevent her from calling the police as she told Griffin, and she found her missing car keys in the yard. Lillybridge brought her phones back when he returned that evening for his belongings.

After hearing arguments of counsel, the district court stated that it must review "two different versions of events . . . and so I look at the kind of corroborating details that support each of those stories and I look at the defendant's history and characteristics and I look at other things to help me figure out what happened." In finding that S.F. was not credible, the court noted:

- The photo of the son's phone showed damage that "doesn't happen when you drop a cell phone."

- It was not credible that S.F. caused the hole in the ceiling.

- It did not make sense that Lillybridge would throw S.F.'s car keys in the yard and take her two cell phones if there was no assault.

- Victims often retract in domestic abuse situations.

- Lillybridge's PSR stated that he assaulted another woman who kicked him out of her house.

-3-

Based on the finding that S.F. was not credible in recanting the accusations she made to Griffin, and that Griffin credibly testified to conduct by Lillybridge warranting revocation, the district court revoked supervised release. The advisory guidelines range for this Grade C new law violation was six to twelve months imprisonment. Weighing Lillybridge's extensive history of violent offenses and repeated failure to do well on supervised release against mitigating evidence that he had been drug free and employed, the court sentenced him to eight months.

On appeal, Lillybridge argues that in finding a supervised release violation the district court applied "an incorrect legal standard" -- it gave significant weight to improper factors, his prior bad act of assaulting another woman and generalized statements about domestic abuse victims, and it failed to properly consider S.F.'s sworn testimony. In essence, the argument is that the district court clearly erred in finding S.F.'s revocation hearing testimony not credible.

At the hearing, victim S.F. recanted her prior accusations. The district court, with the opportunity to observe the demeanor of this live witness, carefully explained objective facts and reasonable inferences supporting its finding that S.F.'s recantation was not credible. It was not an "improper factor" to consider that S.F.'s recantation "was influenced by family pressures." United States v. Provost, 969 F.2d 617, 621 (8th Cir. 1992). And that Lillybridge had assaulted another woman under similar circumstances was a relevant corroborating circumstance. As Judge Richard Arnold wrote in United States v. Grey Bear, recantation "is undeniably material," but when the district court concludes that a recantation is not believable, "[it] is almost impossible for an appellate court to hold that a district judge's rejection, on credibility grounds, of the testimony of a live witness is clearly erroneous, and we have no disposition to do so here." 116 F.3d 349, 351 (8th Cir. 1997).

Lillybridge further argues that the district court abused its discretion by imposing a substantively unreasonable sentence that is longer than necessary to

-4-

achieve the goals of sentencing.  We disagree.  The court carefully weighed the 18 U.S.C. § 3553(a) sentencing factors, including aggravating factors in addition to the assault that warranted revocation, and imposed a sentence within the advisory guidelines range.  There was no abuse of discretion.  See, e.g., United States v. Perkins, 526 F.3d 1107, 1111 (8th Cir. 2008).

The judgment of the district court is affirmed.

_____