## No. 10-1548. Brenda Cash, Acting Warden, Petitioner v. Bobby Joe Maxwell.

565 U.S. 1138, 132 S. Ct. 611, 181 L. Ed. 2d 785, 2012 U.S. LEXIS 410.

January 9, 2012. Motion of respondent for leave to proceed in forma pauperis granted. Petition for writ of certiorari to the United States Court of Appeals for the Ninth Circuit denied.

Same case below, 628 F.3d 486.

Statement of Justice **Sotomayor** respecting the denial of certiorari.

The Antiterrorism and Effective Death Penalty Act of 1996 requires that federal habeas courts extend deference to the factual findings of state courts. But "deference does not imply abandonment or abdication of judicial review." *Miller-El* v. *Cockrell,* 537 U.S. 322, 340, 123 S. Ct.

1029, 154 L. Ed. 2d 931 (2003). Congress stated in no uncertain terms that federal habeas relief remains available when a state court's holding is "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(2). In this case, the state court's denial of relief to respondent Bobby Joe Maxwell was premised on its factual finding that there was "no credible or persuasive evidence Sidney Storch lied at [Maxwell's] trial in 1984." App. to Pet. for Cert. 137. Because the Ninth Circuit meticulously set forth an avalanche of evidence demonstrating that the state court's factual finding was unreasonable, see *Maxwell* v. *Roe,* 628 F.3d 486, 498-506 (2010), I agree with the Court's decision to deny certiorari.

Sidney Storch was one of the most notorious jailhouse informants in the history of Los Angeles County. During a 4 year period in the mid-1980's, he testified in at least a half-dozen trials, each time claiming that the defendant had confessed to him in prison. See Rohrlich & Stewart, Jailhouse Snitches: Trading Lies for Freedom, L. A. Times, Apr. 16, 1989, p. 30 ("Said inmate Daniel Roach: 'It seems that half the world just confesses to Sidney Storch' ").

Throughout this period, however, evidence mounted that Storch repeatedly was fabricating inmates' confessions for personal gain. As even the State acknowledges, Storch's signature method was to fashion inmates' supposed confessions from publicly available information in newspaper articles. 2 Record 262. At Maxwell's postconviction hearing, one former county prosecutor explained that he declined to use Storch in a high-profile 1986 murder case after determining "Storch was not telling the truth about [the defendant's] alleged statements," and had lied about having heard a confession at a time when he was not in the defendant's cell. 9 *id.,* at 1824. Another prosecutor later refused to use Storch in a different case after discovering that his "testimony was similar to the newspaper accounts of the case." *Id.,* at 1825. In 1987, sheriffs deputies even confiscated a *manual* writ-

ten by Storch instructing other jailhouse snitches how to fabricate confessions. None of this was out of character for Storch, who was discharged from the Army in 1964 because he was a " 'habitual liar,' " and was arrested repeatedly for crimes of dishonesty, including forgery, fraud, and false impersonation—including falsely impersonating a Central Intelligence Agency officer. 628 F.3d, at 498.

As the Ninth Circuit explained at length, both before and after Maxwell's trial, various police officers and prosecutors believed Storch to be unreliable, dishonest, and willing to set up defendants for his own ends. At Maxwell's postconviction hearing, one police officer described how Storch sought to "set . . . up" someone during a forgery investigation, 6 Record 1118; another detective testified that he would have put Storch on a Los Angeles Police Department list of unreliable informants prior to Maxwell's trial. Not long after Maxwell's trial, prosecutors refused to put Storch on the stand, believing him to have fabricated defendants' confessions. And even the State conceded that Storch lied about a variety of material facts at Maxwell's own trial, including his own criminal record and his motivation for testifying. This powerful evidence supported Maxwell's claim that Storch falsely testified about Maxwell's supposed confession—using precisely the same *modus operandi* that Storch used time and again to falsely implicate other defendants. See 628 F.3d, at 504-505.

The dissent labels all of this evidence "circumstantial." *Post*, at 1143, 181 L. Ed. 2d, at 788 (opinion of Scalia, J.). It insists that it is possible that Storch repeatedly falsely implicated other defendants, and fabricated other material facts at Maxwell's trial, but uncharacteristically told the truth about Maxwell's supposed confession. Of course, that is possible. But it is not reasonable, given the voluminous evidence that Storch was a habitual liar who even the State concedes told other material lies at Maxwell's trial.[1]

Here, the Ninth Circuit recognized that 28 U.S.C. § 2254(d)(2) imposes a "daunting standard—one that will be satisfied in relatively few cases." 628 F.3d, at 500 (internal quotation marks omitted). The court below found that standard met only after describing, in scrupulous detail, the overwhelming evidence supporting the conclusion that Storch falsely testified at Maxwell's trial[2]—attempting to manipulate the integrity of the judicial system as he did in numerous other cases. I agree with the Ninth Circuit's determination.

---

1. The dissent suggests two police officers testified that Starch provided them "accurate and reliable information" when working with Storch several years before Maxwell's trial. See *post*, at 1143, 181 L. Ed. 2d, at 788. In fact, when asked if Storch provided "accurate information," one officer stated: "As far as I know, yes. I don't remember any of this being either good or bad . . . ." 6 Record 1091. The second officer, when asked if Storch was a "reliable individual," responded that "it would depend on what time," *id.,* at 1117, and noted that he had ceased all contact with Storch well before Maxwell's trial, after Storch's attempt to "set . . . up" a prospective defendant, *id.,* at 1118.

2. The dissent implies that there was strong evidence suggesting that Starch was truthful. But the testimony by two other jailhouse informants who contended that Maxwell confessed to them, see post, at 4, was properly deemed "ludicrous" by the state appellate court. App. to Pet. for Cert. 174. One informant was committed to a mental hospital, and informed the district attorney before trial that his story implicating Maxwell had been "nothing more than a story of untruths founded by an 'imaginary delusion.' " Tr. 6532. The other informant claimed that Maxwell confessed to 10 murders while raping him during the middle of the day in his cell. That story was refuted by another inmate, and when the informant attempted to obtain bail on the basis of his testimony regarding Maxwell, another court denied relief. See, e.g., *id.,* at 6744-6754.

The dissent also ignores that the physical evidence against Maxwell was largely circumstantial, and that the State's prosecutor acknowledged that he had regarded the case against Maxwell as "weak from an evidential standpoint." 9 Record 1844. Three men who briefly saw the killer provided a description of a man taller and heavier than Maxwell. And when Maxwell was placed in a lineup, and made to say a remark all three men had heard the killer say, none of the three identified Maxwell. One of the eyewitnesses even stated "you got everybody up there that doesn't look anything like him." Tr. 8641A.

But even to the extent that the dissent sees error in that determination, the Ninth Circuit conducted precisely the inquiry required by § 2254(d)(2) and our precedents. "The principal purpose of this Court's exercise of its certiorari jurisdiction is to clarify the law." *Caperton* v. *A.T. Massey Coal Co.,* 556 U.S. 868, 902, 129 S. Ct. 2252, 173 L. Ed. 2d 1208 (2009) (Scalia, J., dissenting). Mere disagreement with the Ninth Circuit's highly factbound conclusion is, in my opinion, an insufficient basis for granting certiorari. See this Court's Rule 10.

Justice **Scalia**, with whom Justice **Alito** joins, dissenting from denial of certiorari.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) put an end to federal-district-court readjudication of issues already decided, with full due process of law, in state criminal cases. It provides that a writ of habeas corpus challenging a state criminal conviction shall not be granted with respect to any claim "adjudicated on the merits in State court proceedings," unless that state adjudication

"(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

"(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

We have called this a "difficult to meet . . . and highly deferential standard" which "demands that state-court decisions be given the benefit of the doubt," *Cullen* v. *Pinholster,* 563 U.S. 170, 181, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011) (internal quotation marks omitted). It forbids federal courts "to second-guess the reasonable decisions of state courts," *Renico* v. *Lett,* 559 U.S. 766, 773, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010).

I believe that in this case the United States Court of Appeals for the Ninth Circuit unquestionably ignored these commands—thereby invalidating two 26-year-old murder convictions which the intervening loss of witnesses and evidence will likely make it impossible to retry. I dissent from the Court's decision not to grant certiorari and summarily reverse the Ninth Circuit's judgment.

I

In the late 1970's, 10 homeless men were murdered in downtown Los Angeles—a series of murders that came to be known as the "Skid Row Stabber" killings. Respondent Bobby Joe Maxwell was charged with all 10 murders, and in 1984 a California jury convicted him of two counts of first-degree murder and one related count of robbery. Maxwell was sentenced to life imprisonment without the possibility of parole, and his convictions were affirmed on direct appeal.

In 1995, Maxwell filed a habeas corpus petition in the California Supreme Court, alleging that a prosecution witness, Sidney Storch, had given false testimony at trial. Storch, a former cellmate of Maxwell's, had testified that, after reading the newspaper account of a palm print's being found at the scene of one of the murders, Maxwell stated he was not prone to that type of mistake because he "wore gloves with the fingers cut off so as to keep his hands warm and leave his fingers free." 3 Record 537. The California Supreme Court issued an order to show cause whether Maxwell was entitled to relief based on his allegation of false testimony, returnable to the Superior Court. After conducting an evidentiary hearing that extended over the course of two years and included the testimony of more than 30 witnesses and the introduction of over 50 exhibits, the Superior Court issued a 34-page opinion concluding that Storch had not lied and denying the habeas petition. App. to Pet. for Cert. 137. In 2001, Maxwell again filed a habeas petition in the California Supreme Court, alleging, *inter alia,* that the State had violated his right to due process by failing to disclose certain evidence relating to Storch. See *Brady* v. *Maryland,* 373 U.S. 83, 87, 83 S. Ct. 1194,

10 L. Ed. 2d 215 (1963). The court summarily denied the petition. App. to Pet. for Cert. 105.

Maxwell then filed a petition for writ of habeas corpus under § 2254 in the United States District Court for the Central District of California, renewing his claims that his conviction violated his right to due process because (1) it was based on the false testimony of Storch; and (2) the State failed to disclose favorable and material evidence regarding Storch. The District Court dismissed the petition, *id.,* at 47, but the Ninth Circuit reversed. *Maxwell* v. *Roe,* 628 F.3d 486 (2010).

## II

## A

First, the Ninth Circuit set aside the state habeas court's determination that Storch had not fabricated his testimony. It based that action on nothing more than circumstantial evidence indicating that Storch was generally an untruthful person. For example, the court pointed to various mistruths Storch purportedly told at trial (regarding, for example, his criminal history and his motivation for coming forward). But as the Ninth Circuit itself recognized, those lies "d[o] not alone establish that Storch lied about the confession." *Id.,* at 501. The Ninth Circuit also concluded that Storch "misrepresented his sophistication and experience as a jailhouse informant." *Ibid.* This finds no support in the record. App. to Pet. for Cert. 119-120. Storch's only testimony as to his informant history was that he had never before testified for the district attorney, 3 Record 551; no evidence in the habeas record contradicts that. The Ninth Circuit went on to conclude that Storch had a history of falsely implicating individuals. But any evidence of this, as the state court noted, was highly speculative, see, *e.g.,* App. to Pet. for Cert. 136—and two officers testified at the state evidentiary hearing that in various cases Storch

had provided them with accurate and reliable information. *Id.,* at 125-126. Finally, the Ninth Circuit accorded significance to trials subsequent to Maxwell's in which Storch allegedly testified falsely. The state court had concluded that these post-trial events did not establish the falsity of Storch's testimony, *id.,* at 136-137, and the Ninth Circuit apparently agreed, see 628 F.3d, at 503 ("The evidence of Storch's later lies under oath does not establish the nature of his testimony at Maxwell's trial").*

In sum, the evidence relied on by the Ninth Circuit might permit, but by no means compels, the conclusion that Storch fabricated Maxwell's admission. And that leaves out of account (just as the Ninth Circuit inexplicably did) the other evidence suggesting that Storch was not lying— including testimony that Maxwell confessed the crime, indeed confessed the crime much more explicitly, to two cellmates other than Storch. The statement of Justice Sotomayor makes its task far too easy by setting out to show the unreasonableness of the California court's statement that there was "no credible or persuasive evidence Sidney Storch lied," *ante,* at 1139, 181 L. Ed. 2d, at 785 (internal quotation marks omitted). It is not the court's statements that are at issue here. To establish even a wild exaggeration is not to establish what § 2254(d)(2) requires: that the state court's *"decision . . .* was based on an unreasonable *determination* of the facts." The only factual determination necessary to support the California court's decision was that Maxwell *had not established* that Storch lied. And it is of course *that* point to which the California court directed its attention. ("[Certain evidence] does little to establish whether [Storch] lied about [Maxwell's] admissions in 1984." App. to Pet. for Cert. 136.) What Justice Sotomayor calls "the overwhelming evidence supporting the conclusion that Storch falsely testified at Maxwell's trial,"

---

* The evidence identified by Justice Sotomayor is similarly inconclusive, and the state habeas court reasonably discounted it. For instance, the so-called "manual," *ante,* at 1139, 181 L. Ed. 2d, at 785, is all but illegible, 2 Record 461; as the state court recognized, the portions that can be read do not reveal whether Storch was instructing another inmate to "provid[e] substance or style." App. to Pet. for Cert. 133. And the opinion of the prosecutor who declined to use Storch in a trial that postdated Maxwell's by nearly three years, *ante,* at 1139, 181 L. Ed. 2d, at 786, was deemed "[u]nconvincing" by the state court, since it was based on jail records of questionable accuracy. App. to Pet. for Cert. 134.

*ante*, at 1140, 181 L. Ed. 2d, at 786, consists of nothing more than evidence which establishes, at most, that Storch was an habitual liar. That may well provide reason to suspect that Storch testified falsely at Maxwell's trial; or even to think it likely that Storch testified falsely; but it does not remotely support the conclusion that it was *unreasonable* to determine that Maxwell *had not established* that Storch testified falsely. In finding the state court's determination not merely wrong but unreasonable, the Ninth Circuit plainly did what we have said § 2254(d) forbids: It "use[d] a set of debatable inferences to set aside the conclusion reached by the state court." *Rice* v. *Collins,* 546 U.S. 333, 342, 126 S. Ct. 969, 163 L. Ed. 2d 824 (2006).

To make matters worse, having stretched the facts, the Ninth Circuit also stretched the Constitution, holding that the use of Storch's false testimony violated the Fourteenth Amendment's Due Process Clause, whether or not the prosecution knew of its falsity. See 628 F.3d, at 506-507. We have never held that, and are unlikely ever to do so. All we have held is that "a conviction obtained through use of false evidence, *known to be such by representatives of the State,* must fall under the Fourteenth Amendment." *Napue* v. *Illinois,* 360 U.S. 264, 269, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959) (emphasis added). This extension of due process by the Ninth Circuit should not be left standing.

### B

The Ninth Circuit also concluded that the California Supreme Court unreasonably applied *Brady.* In its view, the prosecution committed a *Brady* violation by failing to disclose two pieces of impeachment evidence: (1) the difference between Starch's original plea deal and the plea deal Storch negotiated independently from his public defender after he offered to testify; and (2) Storch's cooperation with law enforcement officials in the years preceding Maxwell's trial. The Ninth Circuit said that this evidence was material to Maxwell's guilt, (which is what a violation of *Brady* requires, see *Strickler* v. *Greene,* 527 U.S. 263, 280, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999)), because "Storch's testimony was crucial to the prosecution's case" and the evidence "could have been used to undermine" Storch's credibility. 628 F.3d, at 512.

Neither of these contentions is remotely true. As for the "crucial" nature of Storch's testimony: Storch was just one of four cellmates who recounted Maxwell's incriminating statements, and there was ample other evidence of Maxwell's guilt, including an eyewitness identification and evidence of Maxwell's palm print near one of the murder scenes. And as for the potential utility of the undisclosed evidence in *refuting* Storch's less-than-crucial testimony: According to the Ninth Circuit, evidence that Storch originally had a plea deal of 36 months, which improved to 16 months after he offered to testify, would have "provided Maxwell with impeaching evidence relevant to Storch's motivation for testifying." *Id.,* at 510. But the jury already *knew* that Storch would not have testified without a deal. Storch said on the stand that he faced the possibility of six years' imprisonment on pending charges and received a 16-month deal in exchange for his testimony; and responded in the negative when asked whether he "would be willing to bring forth this story and tell the D. A. to forget the kindness that he is showing towards" him. 3 Record 562-563. The additional knowledge that he secured a deal that improved his sentence from 36 months to 16 months (rather than from six years to 16 months) would have done nothing to reduce the jurors' belief in his testimony.

The Ninth Circuit also erred in concluding that evidence of Starch's prior activity *as a police informant* would have helped to contradict his testimony that he had never before *testified for the district attorney.* See 628 F.3d, at 511. The recitation of this non sequitur is its own refutation.

Finally, the Ninth Circuit's conclusion that both pieces of evidence could have been used to establish Starch's sophistication as an informant does not hold water. To begin with, the court erred in its belief that Storch "independently negotiated" the new deal, *id.,* at 498. While it was true enough that Storch "worked a deal . . . without his public defender," *id.,* at 510, that does not establish that he negotiated a deal *on his own.* As Maxwell acknowledges, Storch "obtained a private lawyer to work out" the deal. Brief in Opposition 14. Moreover, the jury was aware of this fact because Storch himself testified to it. 3 Re-

cord 596. And it is incomprehensible how the substitution of a 16-month-instead-of-36-month deal for a previous 16-month-instead-of-6-year deal demonstrates Starch's sophistication. Of similarly questionable value is evidence of Storch's prior activity as a police informant. Contrary to the Ninth Circuit's intimations, this would not have portrayed Storch as a wheeler-dealer who trumped up stories to receive decreased sentences. Indeed, there was no evidence that Storch received anything in exchange from the police, App. to Pet. for Cert. 125-126, and as I have described, *supra,* at 1143, 181 L. Ed. 2d, at 788-789, two officers testified at the evidentiary hearing that information he provided them was reliable.

In view of the evidence, it is not possible to say that the California Supreme Court's denial of the claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington* v. *Richter,* 562 U.S. 86, 101, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011). In fact, it seems clear that Maxwell was not entitled to relief.

\*  \*  \*

It is a regrettable reality that some federal judges *like* to second-guess state courts. The only way this Court can ensure observance of Congress's abridgement of their habeas power is to perform the unaccustomed task of reviewing utterly fact-bound decisions that present no disputed issues of law. We have often not shrunk from that task, which we have found particularly needful with regard to decisions of the Ninth Circuit. See, *e.g., Cavazos* v. *Smith, ante,* at 1, 132 S. Ct. 2, 181 L. Ed. 2d 311 *(per curiam)* (reinstating California conviction for assault on a child resulting in death); *Felkner* v. *Jackson,* 562 U.S. 594, 131 S. Ct. 1305, 179 L. Ed. 2d 374 (2011) *(per curiam)* (reinstating California conviction for sexual attack on a 72-year-old woman); *Premo* v. *Moore,* 562 U.S. 115, 131 S. Ct. 733, 178 L. Ed. 2d 649 (2011) (reinstating Oregon conviction for murder of a kidnaped victim); *Knowles* v. *Mirzayance,* 556 U.S. 111, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009) (reinstating

California first-degree murder conviction); *Rice* v. *Collins,* 546 U.S. 333, 126 S. Ct. 969, 163 L. Ed. 2d 824 (2006) (reinstating California conviction for cocaine possession); *Kane* v. *Garcia Espitia,* 546 U.S. 9, 126 S. Ct. 407, 163 L. Ed. 2d 10 (2005) *(per curiam)* (reinstating California conviction for carjacking and other offenses); *Yarborough* v. *Gentry,* 540 U.S. 1, 124 S. Ct. 1, 157 L. Ed. 2d 1 (2003) *(per curiam)* (reinstating California conviction for assault with a deadly weapon); *Woodford* v. *Visciotti,* 537 U.S. 19, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002) *(per curiam)* (reinstating capital sentence for California prisoner convicted of first-degree murder, attempted murder, and armed robbery). Today we have shrunk, letting stand a judgment that once again deprives California courts of that control over the State's administration of criminal justice which federal law assures. We should grant the petition for certiorari and summarily reverse the Ninth Circuit's latest unsupportable § 2254 judgment.