[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 25, 2012
JOHN LEY
CLERK

No. 11-12244
_____

D.C. Docket No. 4:08-cv-00175-SPM-WCS


RIK SARGENT,

                                        Petitioner-Appellant,

                        versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,

                                        Respondent-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(June 25, 2012)

Before EDMONDSON, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

Rik Sargent, a former Florida state prisoner currently on probation, appeals

the district court's denial of his petition for habeas relief, brought pursuant to 28 U.S.C. § 2254.  In his petition, Sargent alleged that the state prosecutor failed to correct the false testimony of one of the state's witnesses, a crime-lab toxicologist, during his criminal trial, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 105 (1972).  The district court concluded that there was no *Giglio* error because there was no perjured testimony, and that the knowledge of a state crime-lab analyst could not be imputed to the prosecutor to hold her responsible for the alleged false testimony.  After denying relief, the district court granted a certificate of appealability (COA) on the *Giglio* issue. After review of the record, and with the benefit of oral argument, we affirm.

I. Background

Sargent was charged with sexual battery on a victim who was physically helpless to resist.  Fla. Stat. Ann. § 794.011(4)(a).  "Physically helpless" is defined under Florida law as "unconscious, asleep, or for any other reason physically unable to communicate" lack of consent.  *Id.* § 794.011(1)(e).

At trial, the victim testified that she had taken Ambien, was asleep, and was physically helpless during the attack.  She explained she informed Sargent that she had taken medication to help her fall asleep and that, when Sargent asked, she confirmed that the medication made her forget things.  She testified that she fell

asleep after taking Ambien but awoke when she felt penetration. She asked Sargent what he was doing and "then . . . fell unconscious again." Sargent did not testify.

The state called the victim's doctor, Albert Menduni, who testified that he prescribed the victim a variety of medications, including Ambien. Menduni explained that Ambien was a hypnotic that typically initiated sleep within five to ten minutes. He further testified that once a person takes Ambien, she will sleep very well for the first four hours and will be very difficult to awaken. The prosecutor showed Menduni a Florida Department of Law Enforcement (FDLE) lab report that listed the drugs found in the victim's urine. The prosecutor asked if the lab had screened the urine sample for Ambien. Menduni stated, "I know of no drug screen for Ambien. They did not screen for Ambien. The technology they [the FDLE] use did not screen for Ambien." On cross-examination, defense counsel asked: "[I]f someone takes Ambien, you, right here today, do not know a way to prove whether they took it or not." Menduni responded, "I don't know of an assay. That doesn't mean there isn't an assay. I really wasn't asked to research that."

Ted Houston, a defense witness expert in pharmacology, testified that, based on the FDLE report, there had been no test for Ambien. Houston stated that

he was unaware of any screening test available for Ambien, but that it would "fall out" on the lab report as an "unidentifiable substance." Houston confirmed there was no unidentifiable substance listed on the FDLE report. On cross-examination, the state asked Houston, "so as far as you know, based on that report, they didn't test for Ambien at FDLE?" Houston agreed. Houston reiterated that he was unaware of any test to identify Ambien.

In closing argument, Sargent's counsel challenged the victim's credibility. In rebuttal, the prosecutor stated:

> Menduni told you that the screen they ran would not find Ambien. There is nothing that says that if Ambien was in her system, the screen they ran at FDLE would show that. And Dr. Menduni and even Mr. Houston agreed there is no test to determine whether Ambien is in your system . . . . There is no test.

Toxicologist Lisa Zeller's FDLE lab report was admitted into evidence by stipulation. The report confirmed that the FDLE had tested the victim's urine and blood for sedative-hypnotics. Although Zeller's report listed the presence of a variety of substances, Ambien was not one of them. Neither party spoke with Zeller before the trial.

After trial, defense counsel spoke with Zeller and learned that the police had told Zeller the victim took Ambien and that Zeller tested for Ambien. Sargent then moved for a new trial, arguing that the state withheld *Brady* material by

failing to reveal that the victim's urine could have been tested for Ambien, it was tested, and no Ambien was identified. Sargent explained that Zeller admitted she tested the urine for Ambien, but that Ambien was not listed on the report because it either was not detected or it was present in a level too low to be detected. Sargent argued that the FDLE analyst's knowledge was imputed to the state and the state had a duty to disclose this possibly exculpatory evidence. Moreover, the state had a duty to correct inaccurate or false testimony, such as Menduni's, that there was no test for Ambien. Therefore, Sargent argued, although the state knew that the FDLE test could, but did not, detect Ambien, the "state elicited evidence to the contrary," in violation of *Giglio*. Sargent claimed that the outcome of his trial could have been different had this evidence been disclosed.

The state court conducted a hearing at which Zeller testified. The court confirmed that Zeller's report had been admitted into evidence by stipulation. The court then denied the motion for a new trial, noting that Sargent could have presented direct evidence that the victim had not taken any Ambien and that he chose not to testify. Sargent's direct appeal of his conviction was summarily affirmed. Sargent then filed the instant § 2254 petition in the district court, raising

the *Brady*/*Giglio* violation and an ineffective-assistance-of-counsel claim.[1]

A magistrate judge conducted an evidentiary hearing, at which Zeller testified that she had screened the victim's urine using a gas-chromatograph-mass-spectrometer (GC-MS) which, at the time, was the only test available that would have identified Ambien. She confirmed that if someone testified there was no test for Ambien, "that would be incorrect." She further stated that the police told her the victim had taken Ambien, she tested for Ambien, and she did not find any in the urine sample.[2] But she qualified her answer by explaining that Ambien, which is a sedative-hypnotic, has a short half-life, and the amount of time that had passed since the victim had taken the Ambien could have made the test inconclusive. She testified that she submitted her report to the police department, which would have forwarded it to the state attorney.

Menduni testified that he was unaware of what testing the FDLE conducted and was not referring to the GC-MS test when he stated at trial that there was no test to screen for Ambien. He stated that, had he been asked if Ambien could be detected by any test available, he would have said yes, but that had not been the

---

[1] Sargent did not cite *Giglio* in either his state post-trial motion or his § 2254 petition. But he argued that the prosecutor had a duty to correct false testimony and failed to do so. Thus, we conclude Sargent sufficiently set forth a *Giglio* claim.

[2] Zeller also confirmed that no Ambien was detected in the blood sample taken from the victim.

6

question posed to him. Houston testified that, at the time of the trial, he believed there was a test for Ambien, although he testified otherwise. He stated that, despite the short half-life of Ambien, he still would expect it to show up in a urine sample taken 13 to 14 hours later. He admitted that his testimony might have been "misguided."

The magistrate judge considered that it was possible that the state court had rejected Sargent's *Brady/Giglio* claim because he had stipulated to the admission of Zeller's report, which would not implicate federal law for purposes of the § 2254 review. Thus, the magistrate judge found that the state court had not considered the claim and its decision was not entitled to deference. The magistrate judge further found that the state court's ruling "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." Conducting a *de novo* review, the magistrate judge found that Menduni's testimony was false, the prosecutor knew or should have known it was false, and the statement was material.[3] Accordingly, the magistrate judge recommended granting Sargent's petition for habeas relief.

After considering the state's objections to the magistrate judge's

---

[3] The magistrate judge further found that, even if the deferential standard of review applied, the analysis was the same.

recommendation, and supplemental affidavits filed in support of the objections, the district court denied the petition as to the *Giglio* violation. Applying the deferential standard of review, the district court found that there was no perjured testimony because Menduni had no intent to mislead the jury. The court further found that the state did not suppress any evidence under *Giglio* because the defense had a copy of Zeller's lab report. Finally, the court found that Zeller's knowledge that there actually was a test for Ambien could not be imputed to the prosecutor because Zeller, a toxicologist, was not part of the prosecutorial team.

Sargent filed his notice of appeal and application for a COA. The district court then issued a COA on the *Giglio* issue.

II. Discussion

Our review of the state court decision is limited by the Anti-Terrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996). *See* 28 U.S.C. § 2254; *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000). Under that statute, we cannot grant habeas relief "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the state court's decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law. . . ."

28 U.S.C. § 2254(d).

A. AEDPA Deference

Before we address the merits of the petition, we must first determine the appropriate standard of review in this case.

Under the AEDPA, we must give deference to the state court's decision whenever a claim is adjudicated on the merits.[4] *Loggins v. Thomas*, 654 F.3d 1204, 1218 (11th Cir. 2011). For § 2254 purposes, a claim is presumed to be adjudicated on the merits "unless the state court clearly states that its decision was based solely on a state procedural rule . . . ." *Id.* at 1217 (internal quotation marks omitted); *see also Harrington v. Richter*, 131 S.Ct. 770, 784-85 (2011). The fact that the state court does not offer an explanation for its decision does not disqualify it from being an adjudication on the merits. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington*, 131 S.Ct. at 784. When the last state court rendering judgment affirms without explanation, we presume that it rests on the reasons

---

[4] Under the AEDPA, we give deference to the state court's factual findings. 28 U.S.C. § 2254(e). But "the presumption of correctness applies only to findings of fact made by the state court;" it does not extend to determinations of law or to mixed determinations of law and fact. *Guzman v. Sec'y Dep't of Corr.*, 663 F.3d 1336, 1346 (11th Cir. 2011) (internal quotation marks omitted). Thus, although the determination whether to impute knowledge to the prosecutor would not be entitled to deference, we nevertheless defer to the state court's ultimate conclusion and determine whether that decision was contrary to, or an unreasonable application of, clearly established federal law.

given in the last reasoned decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).

Here, Sargent raised the *Brady*/*Giglio* claim in his motion for a new trial and on direct appeal. The state court held an evidentiary hearing and denied the motion for a new trial. The state court noted that Zeller's report had been admitted by stipulation and that Sargent could have presented direct evidence that the victim had not taken Ambien. Because the state court did not clearly indicate that its decision rested on procedural grounds, we will treat the state court's decision as one on the merits entitled to deference.

Although the state court's decision may leave this court without explicit factual findings to which we can defer, "implicit findings of fact are entitled to deference under § 2254(d) to the same extent as explicit findings of fact." *Blakenship v. Hall*, 542 F.3d 1253, 1272 (11th Cir. 2008). "In other words, since we apply AEDPA deference to summary adjudications, we may uphold the state court's decision . . . if our review of the record reveals that a reasonable view of the facts before the state court supports such a conclusion." *Id.*

B. Merits of the *Giglio* claim

When we consider a district court's denial of a § 2254 habeas petition on the merits, we review questions of law and mixed questions of law and fact *de*

10

*novo*, and we review findings of fact for clear error. *Rhode v. Hall*, 582 F.3d 1273, 1279 (11th Cir. 2009). As noted, we will grant habeas relief only if the state court's decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The petitioner carries the burden to show the state court's decision was contrary to, or an unreasonable application, of federal law. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

Under the "contrary to" clause, we consider whether the "state court arrived at a conclusion opposite to that reached by" the Supreme Court or "decide[d] a case differently than th[e] Court has on a set of materially indistinguishable facts."[5] *Williams*, 529 U.S. at 412-13; *see also Consalvo v. Sec'y. Dep't of Corr.*, 664 F.3d 842, 844 (11th Cir. 2011). Under the "unreasonable application" prong, we consider whether the state court identified the correct legal rule from Supreme Court case law but unreasonably applied that rule to the facts before it, or whether "a state court unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268

_____

[5] Section 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. *Bell v. Cone*, 535 U.S. 685, 694 (2002).

11

F.3d 1223, 1241 (11th Cir. 2001). Clearly established federal law refers to holdings of the Supreme Court as of the time of the state court decision at issue. It does not extend to dicta or the decisions of lower federal courts. *Ventura v. U.S. Att'y Gen.*, 419 F.3d 1269, 1278-79 (11th Cir. 2005).

Sargent argues that Menduni's testimony was false and misleading and the prosecutor failed to correct it, leaving the jury with a materially false impression and resulting in a *Giglio* error. And he argues that the toxicologist, Lisa Zeller, was part of the prosecutor's team, so that her knowledge should be imputed to the prosecutor under *Giglio*. He further argues that other courts have extended *Giglio*'s rationale to the prosecutor's statement in closing argument.

In *Mooney v. Holohan*, 294 U.S. 103, 112 (1935), the Supreme Court held that it was impermissible for the prosecution to deceive the court and jury with the presentation of known false evidence. The Supreme Court later expanded this rule to include situations in which the prosecution does not solicit the false evidence but "allows it to go uncorrected when it appears." *Napue v. Illinois*, 360 U.S. 264, 269 (1959). As the Court in *Napue* explained, "a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." *Id.* Thereafter, in *Brady*, the Court held that "the suppression by the prosecution of evidence favorable to an accused upon request

12

violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87.

"*Giglio* error, a species of *Brady* error, occurs when the undisclosed evidence demonstrates that the prosecution's case included perjured testimony and that the prosecution knew, or should have known, of the perjury." *Ford v. Hall*, 546 F.3d 1326, 1331 (11th Cir. 2008) (internal citations and quotation marks omitted). To establish a *Giglio* claim, a habeas petitioner must prove: (1) the prosecutor used perjured testimony or failed to correct what he subsequently learned was false testimony; (2) the prosecutor knew the testimony was false; and (3) such use was material. *Guzman*, 663 F.3d at 1348.

Although Sargent argues that he can satisfy all three elements of a *Giglio* claim, his claim fails on the second prong and thus we only need to address whether the prosecutor knew the testimony given was false. To answer this question, we must determine whether Zeller's knowledge that there was a test for Ambien could be imputed to the state prosecutor because a toxicologist is part of the prosecution team.

Sargent contends that, under *Napue*'s "representatives of the State"

13

language,[6] the toxicologist is a member of the prosecution team. *Napue*, 360 U.S. at 269. The prosecution team is defined as "the prosecutor or anyone over whom he has authority," and includes "both investigative and prosecutorial personnel." *Moon v. Head*, 285 F.3d 1301, 1309 (11th Cir. 2002) (citation omitted). But "[k]nowledge on the part of persons employed by a different office of the government does not in all instances warrant the imputation of knowledge to the prosecutor . . . ." *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (quoted in *Moon*, 285 F.3d at 1310).

We cannot agree with Sargent that *Napue* set forth clearly established law in this case. The "representative of the State" in *Napue* was a state attorney, who was undisputably part of the prosecution team. In no case has the Supreme Court defined "representative of the State" to include a state crime-lab analyst. Moreover, "a federal court may not overrule a state court . . . when the precedent from [the Supreme] Court is, at best, ambiguous." *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003). "Until the Supreme Court has made a right *concrete*, it has not been clearly established." *Bland v. Hardy*, 672 F.3d 445, 448 (7th Cir. 2012)

---

[6] Sargent also quotes Justice Scalia's dissent in *Cash v. Maxwell*, 132 S.Ct. 611, 615 (2012) (Scalia, J. dissenting), for the proposition that case law has clearly established that the prosecution team involves all representatives of the state. But Justice Scalia's dissent from the denial of a writ of *certiorari* does not constitute Supreme Court case law for purposes of § 2254. And, although *Napue* is clearly established federal law, we do not read *Napue* as broadly.

14

(internal quotation marks omitted) (citing *Wright v. Van Patten*, 552 U.S. 120, 125–26 (2008), and *Carey v. Musladin*, 549 U.S. 70, 77 (2006)).

Additionally, although the Supreme Court has held that a "prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police," *Kyles v. Whitley*, 514 U.S. 419, 437 (1995), the Court expressly declined to apply this ruling to *Giglio* cases, *id.* at 433 n.7, 437-38. And the duty has limits – there is "no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case." *Agurs*, 427 U.S. at 109 (quoting *Moore v. Illinois*, 408 U.S. 786, 795 (1972)). In Sargent's case, the defense had a copy of Zeller's lab report prior to trial and stipulated to the report's admission. And his counsel did not speak with the toxicologist prior to trial. Given the law, and the facts of the case, we cannot say that the state court unreasonably applied *Giglio*, or that it unreasonably declined to extend existing case law to the facts before it. *Putman*, 268 F.3d at 1241.

If we were writing on a clean slate, we might be persuaded to conclude that the state toxicologist is a member of the prosecution team. But this case does not present us with that option because this is not simply a question of whether the state court correctly applied clearly established law. *See Renico v. Lett*, 130 S.Ct.

15

1855, 1862 (2010) ("[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."(internal citations and quotation marks omitted)). The question is not whether we would conclude that a state crime-lab toxicologist is a member of the prosecution team. The question is whether the state court's application of the law was objectively unreasonable. If, as it did here, the state court properly applied the relevant federal law, and reasonably determined that the law did not extend to the facts before it, the AEDPA requires that we give deference to the state court's decision. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington*, 131 S.Ct. at 785–86 (citation and internal quotation marks omitted); *see also Guzman*, 663 F.3d at 1346. Because the Supreme Court has never addressed whether a toxicologist is a member of the prosecution's team, the state court's decision that Zeller's knowledge could not be imputed to the prosecutor in this case was not unreasonable. *See, e.g.*, *Smith v. Massey*, 235 F.3d 1259, 1272 (10th Cir. 2000) (denying § 2254 petition in a case involving false testimony by a crime-lab chemist because there was no clearly established law addressing what information could be imputed to the prosecutor),

16

*overruled on other grounds by Neill v. Gibson*, 278 F.3d 1044 (10th Cir. 2001).

Because there is no clearly established law holding that a state laboratory toxicologist is a member of the prosecution team such that her knowledge can be imputed to the state prosecutor, we must defer to the state court's decision. The district court's denial of habeas relief is affirmed.

**AFFIRMED.**