M. SMITH, Circuit Judge, dissenting:
I respectfully dissent.
The Supreme Court has repeatedly— and often unanimously — reversed our circuit’s decisions granting § 2254 relief. For example, in its four most recent terms, the Supreme Court has reversed us thirteen times in cases involving our application of AEDPA, 28 U.S.C. § 2254, ten of which reversals have been unanimous. In my view, this case is yet another candidate for reversal because the majority flouts clear Supreme Court AEDPA precedent in order to justify its holding that a state court’s decision is incorrect. In so doing, the majority commits the same error the Supreme Court has criticized our court for making time after time by “collapsing the distinction between ‘an unreasonable application of federal law’ and what [the majority] believes to be ‘an incorrect or erroneous application of federal law.’ ” Nevada v. Jackson, — U.S.—, 133 S.Ct. 1990, 1994, 186 L.Ed.2d 62 (2013) (per curiam) (quoting Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)) (unanimously reversing our grant of habeas relief).[1]
I. Background
As the majority explains, Deck engaged in online conversations with a fictitious *1032 thirteen-year-old named Amy. The trial record shows that Deck and Amy exchanged sexually suggestive messages and that they planned to meet in person to “date” and to engage in sexual acts. Deck indicated that he would not feel safe meeting for the first time at Amy’s home, so they arranged to meet initially at a nearby park.
The day of their planned meeting, Deck told Amy that he was sick, and said: “so no kissing or nothing. [I’m] [j]ust bringing you ... pie.” During their prior online conversations, Deck had repeatedly used the term “pie” as a euphemism for performing oral sex on Amy. Moreover, although Deck stated that he and Amy would not engage in sexual conduct at their first meeting, he also told Amy “I probably won’t be able to keep my hands off of you.”
On February 18, 2006, Deck drove forty-five minutes to meet Amy at the park near her home. Deck arrived around 8:35 p.m., and when he identified himself to a teenage girl, the police arrested him. A subsequent search of Deck’s car revealed, among other things, MapQuest directions to Amy’s apartment, six packaged condoms, and a digital camera. Deck was charged with one count of an attempted lewd act on a child under the age of fourteen and tried before a jury.
During his closing argument, the prosecutor argued that Deck was guilty of an attempted lewd act on a child because: (1) if Amy had been a real thirteen-year-old, Deck would have touched her on February 18, 2006, and (2) in light of Deck’s express intent to engage in sexual conduct with Amy, “any touching” would have constituted a lewd act under California law.
Throughout his closing argument, the prosecutor discussed his understanding of attempt under California law. The prosecutor’s explanation was not a model of clarity, nor was it entirely accurate. The prosecutor first stated,
I need to prove to you that [Deck] took a direct, but ineffectual step ... First of all, his intent was to commit a lewd act. Definitely going down there to engage in a lewd act, lewd contact with Amy. But for that sting operation and Amy being fictitious ... he would have [engaged in a lewd act].
The prosecutor also stated: “But even if [Deck’s] intent was to just meet her, get to know her, break the ice and follow up the next day, the next week, maybe two weekends when mom’s gone, again, as long as he took a direct, but ineffectual step towards that goal, that is all I need.”
Defense counsel did not object to the prosecutor’s closing argument, but instead offered his own explanation of attempt during his closing remarks. Before the jury started its deliberations, the presiding judge correctly instructed the jury concerning the law of attempt, as follows:
A direct step requires more than merely planning or preparing to commit [the offense] or obtaining or arranging for something needed to commit [the offense]. A direct step is one that goes beyond planning and preparation and shows that a person is putting his plan into action. A direct step indicates a definite and unambiguous intent to commit [the offense]. It is a direct move *1033 ment towards the commission of the crime after preparations are made. It is an immediate step that puts the plan in motion so that the plan would have been completed if some circumstances outside the plan had not interrupted the attempt.
(Emphasis added).
On direct appeal, Deck argued, among other things, that his conviction should be reversed because the prosecutor misstated the law of attempt in his closing argument. The California Court of Appeal for the Fourth District (Court of Appeal) agreed that the prosecutor was incorrect when he stated: “[E]ven if [Deck’s] intent was to just meet [Amy], get to know her, break the ice and follow up the next day, the next week, maybe two weekends when mom’s gone, again, as long as he took a direct, but ineffectual step towards that goal, that is all I need.” The Court of Appeal further explained that to be guilty of attempt under California law, “the acts of the defendant must go so far that they would result in the accomplishment of the crime unless frustrated by extraneous circumstances.”
While the Court of Appeal held that the prosecutor misstated the law of attempt, the Court nevertheless affirmed Deck’s conviction. In so doing, the Court of Appeal held that the prosecutor’s legal error did not require reversal because the judge correctly instructed the jury. The Court explained: “[W]e presume the jury followed [the trial judge’s] instructions.... [Thus], the jury knew it was not enough to plan or prepare to commit a lewd act at a potential later rendezvous[, and that] the attempt must consist of ‘an immediate step that puts the plan in motion so that the plan would have been completed if some circumstances outside the plan had not interrupted the attempt.’” According to the majority, the Court of Appeal’s holding is an unreasonable application of clearly established federal law. I respectfully disagree.
II. Clearly Established Law
The majority contends that Deck is entitled to habeas relief, because (1) the prosecutor inadvertently misstated California law in his closing argument, and (2) the majority has “grave doubt” as to whether this misstatement affected the outcome of Deck’s trial. But whether the majority has “grave doubt” about whether a trial error was harmless is only relevant if that error amounts to a constitutional violation. See O’Neal v. McAninch, 513 U.S. 432, 435-36, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995). When a state court has previously determined that no such constitutional error occurred, a federal court “ha[s] no authority” to disrupt the state court’s holding unless the state court’s holding is “ ‘contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.’ ” Parker v. Matthews, — U.S.—, 132 S.Ct. 2148, 2151, 183 L.Ed.2d 32 (2012) (per curiam) (quoting 28 U.S.C. § 2254(d)).
The Supreme Court has also emphasized that “ ‘an unreasonable application of federal law is different from an incorrect application of federal law.’ ” See, e.g., Harrington v. Richter, 562 U.S. 86, 131 S.Ct. 770, 785, 178 L.Ed.2d 624 (2011) (quoting Williams, 529 U.S. at 410, 120 S.Ct. 1495). “The critical point is that relief is available under § 2254(d)(l)’s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no ‘fairminded disagreement’ on the question.” White v. Woodall, — U.S. —, 134 S.Ct. 1697, 1706-07, 188 L.Ed.2d 698 (2014) (quoting Harrington, 131 S.Ct. at 787).
*1034 Importantly, even if a federal court would grant relief to a § 2254 petitioner under a de novo review, a state court’s denial of relief is not necessarily unreasonable. Harrington, 131 S.Ct. at 786. This is so, because “[u]nder § 2254(d), a habeas court must [first] determine what arguments or theories supported or ... could have supported, the state court’s decision,” and then “ ‘[t ] he only question that matters ’ ... [is] whether it is possible [that] fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court.” Id. (quoting Lockyer v. Andrade, 538 U.S. 63, 71, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)) (emphasis added).
The majority’s opinion rests on its conclusion that a defendant’s right to due process of law is violated when the prosecutor misstates the law in his closing argument, even when the judge correctly instructs the jury on the relevant legal principles. While the majority may believe that federal law should protect a criminal defendant from prosecutorial errors of this nature, the Supreme Court has never announced such a rule.
The majority correctly observes that the Supreme Court has stated that prosecutorial misconduct may deny a criminal defendant due process of law. But the only Supreme Court decisions the majority cites for this proposition are Parker v. Matthews, 132 S.Ct. at 2154-55 (holding that § 2254 relief was not proper because the alleged prosecutorial error was not a clearly established constitutional violation),[2] Darden v. Wainwright, 477 U.S. 168, 179-83, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (same), and Caldwell v. Mississippi 472 U.S. 320, 339-40, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985) (holding that the Eighth Amendment is violated when the prosecutor and the court erroneously instruct the jury that the responsibility for determining whether a death sentence is appropriate lies with the court of appeals and not with the jury).
While Parker, Darden, and Caldwell all state that prosecutorial misconduct could render a trial so unfair as to deny a defendant due process of law, in none of these cases did the Supreme Court actually hold that a prosecutor’s error denied a criminal defendant due process, nor did the Court establish what type of misconduct would cause a trial error of constitutional magnitude.

Critically, the Supreme Court has never held, nor even suggested, that a defendant’s constitutional rights are violated where a prosecutor misstates the law in closing argument, but the trial judge correctly instructs the jury. In fact, the Supreme Court has indicated just the opposite.

The Supreme Court has long held that “[a] jury is presumed to follow” a judge’s instructions. Weeks v. Angelone, 528 U.S. 225, 234, 120 S.Ct. 727, 145 L.Ed.2d 727 (2000). This is true even when a party provides contrary instructions. For example, in Brown v. Payton, 544 U.S. 133, 125 S.Ct. 1432, 161 L.Ed.2d 334 (2005), the prosecutor repeatedly and incorrectly argued to the jury that it could not consider certain mitigating evidence in the penalty phase of the defendant’s trial for capital murder. The court failed to provide a corrective instruction, but correctly instructed the jury on the applicable law before deliberations began. Id. at 146-47, 125 S.Ct. 1432. In so doing, the trial court *1035 did not instruct the jury that the prosecutor’s statements were incorrect. Id. It merely provided a correct explanation of the law, which was inconsistent with the prosecutor’s erroneous statements. Id.
The Brovm Court (reversing our court, sitting en banc) held that the petitioner was not entitled to relief under § 2254. Although the Supreme Court acknowledged that the trial court “should have [explicitly] advised the jury that it could consider [the mitigating] evidence,” it was not unreasonable for the state court to conclude that the jury relied on the judge’s correct instructions, rather than on the prosecutor’s misstatements. Id. at 146-47, 125 S.Ct. 1432. As in Brown, the state trial court here did not explicitly instruct the jury that the prosecutor was incorrect when he stated that the jury could convict Deck even if it concluded that Deck did not intend to touch Amy for several days or weeks after their initial meeting. Nonetheless, the court offered an instruction that directly contradicted the prosecutor’s erroneous explanation, when it explained that a defendant is only guilty of attempt if he “[makes a] direct movement towards the commission of the crime after preparations are made[, by] putting his] plan in motion so that the plan would have been completed if some circumstances outside the plan had not interrupted the attempt.”
Despite Brown, the majority concludes that the Supreme Court’s broad statements that a prosecutor’s comments can render a trial constitutionally infirm grant this court authority to set aside the Court of Appeal’s holding that no such error occurred in this case. This conclusion flouts AEDPA’s deferential standard.
The majority is correct that under § 2254 even a general rule can be applied in an unreasonable manner. This is so, because “‘[c]ertain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt.’ ” White, 134 S.Ct. at 1706 (quoting Yarborough v. Alvarado, 541 U.S. 652, 666, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)). But, even where a general rule is at issue, “relief is available under § 2254(d) [ ] ... if, and only if, it is so obvious that [the] clearly established rule applies to a given set of facts that there could be no ‘fairminded disagreement’ on the question.” White, 134 S.Ct. at 1706-07 (quoting Harrington, 131 S.Ct. at 787). “ ‘[I]f a habeas court must extend a rationale before it can apply to the facts at hand,’ then by definition the rationale was not ‘clearly established at the time of the state court decision.’ ” White, 134 S.Ct. at 1706 (quoting Yarborough, 541 U.S. at 666, 124 S.Ct. 2140).
Under the Supreme Court’s case law, it will rarely be “so obvious” that a prosecutorial error violated a defendant’s due process rights that there could be no “ ‘fair-minded disagreement’ on the question.” White, 134 S.Ct. at 1706-07 (quoting Harrington, 131 S.Ct. at 787). In Parker, the Supreme Court specifically addressed this issue and warned that because the standard for determining whether prosecutorial error amounts to a constitutional error “is a very general one ... [we must give state] courts more leeway ... in reaching outcomes in case-by-case determinations [concerning prosecutorial conduct].” Parker, 132 S.Ct. at 2155 (internal quotation marks omitted); see also Harrington, 131 S.Ct. at 786 (“The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.”).
Here, there is simply no Supreme Court precedent establishing “beyond fairminded disagreement” that Deck’s due process rights were violated. The Supreme Court has generally acknowledged that prosecutorial misconduct may, under some circumstances, amount to a due process violation. *1036 But the Court has never suggested that a prosecutor’s inadvertent misstatement of state law creates such a circumstance, particularly where the judge later provides the jury with a correct explanation of the law. For this reason, the Court of Appeal’s holding that the prosecutor’s erroneous statements of law did not violate Deck’s constitutional rights is not “an unreasonable application of ... clearly established law, as determined by the Supreme Court of the United States.” 28 U.S.C. § 2254(d).
III. Prejudice
Not only does the majority grant habeas relief based on a new constitutional rule that it announces today, but it compounds its error by rejecting the Court of Appeal’s reasonable conclusion that any prosecutorial error was not prejudicial. This holding relies on an interpretation of the facts that is tenuous at best.
It is well-settled law that “[a] jury is presumed to follow ... [and] is [also] presumed to understand” a judge’s instructions. Weeks, 528 U.S. at 234, 120 S.Ct. 727. Here, it is undisputed that the presiding judge correctly instructed the jury that a defendant is only guilty of attempt if he “[makes a] direct movement towards the commission of the crime after preparations are made[, by] putting his] plan in motion so that the plan would have been completed if some circumstances outside the plan had not interrupted the attempt.” In order to overcome the presumption that the jury understood and followed this instruction, and to show that the prosecutor’s statements were prejudicial, the majority adopts a strained interpretation of the record. With respect, the majority’s interpretation is neither persuasive nor consistent with the scope of AEDPA review.
The majority notes that during its deliberations, the jury asked the court to “clarify [the] law as it relates to whether defendant did not have to do anything that day only attempt to put it in play.” After the jury submitted this question, the jury adjourned for the day. When the jury reconvened, an alternate juror was substituted for a sick juror. The judge properly instructed the jury to begin its deliberations anew, and to submit any outstanding questions to the court. The new jury did not resubmit the original jury’s question, and it was never answered.
According to the majority, the jury’s unanswered question proves that (1) despite the judge’s correct instruction, the jury believed the prosecutor’s conflicting statement that it could convict Deck even if it found that Deck did not intend to touch Amy for several days or weeks after their initial meeting, and (2) the jury convicted Deck on these grounds. In my view, the majority’s reading is unfounded and does nothing to overcome the presumption that a jury understands and follows a judge’s instructions. Id.
Inchoate offenses are undoubtedly confusing to a lay jury. Recognizing this potential for confusion, the fairest interpretation of the jury’s question is a simple request for confirmation that a defendant may be guilty under the law of attempt even if he does not complete a substantive offensive — “only attempts] to put it in play.” Contrary to the majority’s reading, nothing about the jury’s note indicates that the jury believed that Deck could be guilty of attempt even if he did not intend to touch Amy for several days or weeks following their initial meeting. Rather, the note focuses on what actions one must take (i.e., what he must “do”) to be guilty of attempt.
The majority points to no other record evidence indicating that the jury relied on the prosecutor’s erroneous statements, rather than on the judge’s correct explanation of the law. Thus, I find no reason to *1037 believe that these statements were prejudicial. Moreover, the record certainly does not show that in reaching this same conclusion, the Court of Appeal acted unreasonably or even erroneously.
IV. Conclusion
Relief under § 2254(d) is appropriate only where the state court’s holding is “contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.” 28 U.S.C. § 2254(d). The Supreme Court has specifically warned our court that, “[b]y framing [Supreme Court] precedents at [too] high [a] level of generality, [we] could transform even the most imaginative extension of existing case law into ‘clearly established Federal law, as determined by the Supreme Court’ ... [, which] would defeat the substantial deference that AEDPA requires [to state courts].” Jackson, 133 S.Ct. at 1994. The majority flouts the Supreme Court’s clear directive, and in the absence of clearly applicable Supreme Court precedent, concludes that Deck is entitled to § 2254 relief, merely because the majority believes that the Court of Appeal’s decision is incorrect.[3] For these reasons, I respectfully dissent.

. See also Marshall v. Rodgers, — U.S.—, 133 S.Ct. 1446, 1450, 185 L.Ed.2d 540 (2013) (per curiam) (unanimously reversing our grant of habeas relief and criticizing our court for "[our] mistaken belief that circuit precedent may be used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme] Court has not announced”); Cavazos v. Smith,-U.S. -, 132 S.Ct. 2, 6-8, 181 L.Ed.2d 311 (2011) (per curiam) (reversing our grant of habeas relief and stating: "This Court vacated and remanded this judgment twice before, calling the panel’s attention to this Court's opinions highlighting the necessity of deference to state courts in § 2254(d) habeas cases. Each time the panel persisted in its course, reinstating its judgment without seriously confronting the significance of the cases called to its attention____Its refusal to do so necessitates this Court’s action today.”); Swarthout v. Cooke, 562 U.S. 216, 131 S.Ct. 859, 862-63, 178 L.Ed.2d 732 (2011) (per curiam) (unanimously reversing our grant of habeas relief and stating: "The short of the matter is that the responsibility for assuring that the constitutionally adequate procedures governing California's parole system are properly applied rests with California courts, and is no part of the Ninth Circuit’s business.”); Harrington v. Richter, 562 U.S. 86, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011) (unanimously reversing our grant of habeas relief and criticizing us for "treat[ing] the unreasonableness question as a test of [our] confidence in the result [we] would reach under de novo review”); Premo v. Moore, 562 U.S. 115, 131 S.Ct. 733, 743-46, 178 L.Ed.2d 649 (2011) (unanimously reversing our grant of habeas relief and criticizing us for "trans-posting]” Supreme Court precedent "into a novel context”); Knowles v. Mirzayance, 556 U.S. 111, 121-23, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009) (unanimously reversing our grant of habeas relief and reminding us that "it is not an unreasonable application of *1032 clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court” (internal quotation marks omitted)); Brown v. Payton, 544 U.S. 133, 147, 125 S.Ct. 1432, 161 L.Ed.2d 334 (2005) (reversing our grant of habeas relief and commenting that we had "no basis for ... concluding that the [state court’s] application of [the Supreme Court’s] precedents was objectively unreasonable” (internal quotation marks omitted)).

. I note that the majority improperly relies on Parker, as it was issued after the Court of Appeal denied Deck’s appeal, and it could not therefore have been clearly established federal law at the time of the Court of Appeal’s decision.

. With regard to our treatment of petitions under § 2254, Justice Scalia recently observed:
It is a regrettable reality that some federal judges like to second-guess state courts. The only way this Court can ensure observance of Congress’s abridgement of their habeas power is to perform the unaccustomed task of reviewing utterly fact-bound decisions that present no disputed issues of law. We have often not shrunk from that task, which we have found particularly needful with regard to decisions of the Ninth Circuit. See, e.g., Cavazos v. Smith, 565 U.S. 1, 132 S.Ct. 2, 181 L.Ed.2d 311 (2011) (per curiam) (reinstating California conviction for assault on a child resulting in death); Felkner v. Jackson, 562 U.S. 594, 131 S.Ct. 1305, 179 L.Ed.2d 374 (2011) (per curiam) (reinstating California conviction for sexual attack on a 72-year-old woman); Premo v. Moore, 562 U.S. 115, 131 S.Ct. 733, 178 L.Ed.2d 649 (2011) (reinstating Oregon conviction for murder of a kidnapped victim); Knowles v. Mirzayance, 556 U.S. 111, 129 S.Ct 1411, 173 L.Ed.2d 251 (2009) (reinstating California first-degree murder conviction); Rice v. Collins, 546 U.S. 333, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006) (reinstating California conviction for cocaine possession); Kane v. Garcia Espitia, 546 U.S. 9, 126 S.Ct. 407, 163 L.Ed.2d 10 (2005) (per curiam) (reinstating California conviction for carjacking and other offenses); Yarborough v. Gentry, 540 U.S. 1, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam) (reinstating California conviction for assault with a deadly weapon); Woodford v. Visciotti, 537 U.S. 19, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam) (reinstating capital sentence for California prisoner convicted of first-degree murder, attempted murder, and armed robbery).
Cash v. Maxwell, — U.S.—, 132 S.Ct. 611, 616-17, 181 L.Ed.2d 785 (2012) (Scalia, J„ dissenting from the denial of certiorari).